*1294 OPINION.
TRIjssell :
The sole issue before us is the amount, if any, which is allowable as a deduction from income under the provisions of section 234 (a) (7) of the Revenue Act of 1918, as a reasonable allowance for wear and tear, including obsolescence, of the railroad roadway of petitioner. The amounts which petitioner charged off on its books of account and deducted from income in its income-tax returns have been disallowed by respondent in their entirety. The allowances claimed on the wharf and warehouses of petitioner are not involved in this issue.
The roadway has been operated by the lessees since 1905, save for the period during and after the World War when the property was operated under Federal control through the Director General. Under the provisions of the lease the lessees undertake to operate the railway and to maintain the' property in good repair and operating condition. The lease is nothing more than an operating agreement, for it may be terminated by any of the parties upon so short a notice as 60 days, and the rental to be paid to the lessor is merely a share of the gross income, if any, from operations. There is no provision for the return of the property to the lessor in the same condition in which it was when taken over by the lessees.
Respondent insists that under the lease of December 14, 1905, there is an obligation upon the lessees to repair all damage due to wear and tear and, consequently, petitioner, as lessor, suffers no loss in value of its property from that cause and can claim no deprecation except upon a showing that the lessees refuse to make such repairs and replacements and that a judgment against them would not be collectible.
Petitioner admits the solvency of the lessees but insists that the lease in question only obligates them to make the usual and necessary maintenance repairs to keep the road in good operating condition and that in addition to deterioration arrested by such repairs there is a general decrease in value from use which necessitates replacements at *1295 intervals and that the expense of this is upon it under the lease, and it is this depreciation for which it asks an allowance.
An examination of the lease sustains the contention- of petitioner as to its not placing on the lessees the obligation to make good all depreciation. We see only one meaning to attach to the wording of the lease, that being that the lessee will make the usual maintenance repairs necessary to keep the property in operating condition but the cost of major items of reconstruction, renewal or replacement of permanent character are to be borne by petitioner. Not only is this the natural meaning to be gathered from the phraseology of the lease, but the proof shows that such meaning has been given it by the parties and that at various times during the term of the lease petitioner has paid for reconstruction and renewal of facilities exhausted through wear and tear. In 1911 it is shown to have renewed the rails at a cost to it of $15,897.10, and that at various times it has reconstructed the “riprapping” of its embankment which extends for several miles along the margin of San Pablo Bay and is subject to the action of the water.
Under the record it must be concluded that there is depreciation sustained which the lessees are under no obligation by reason of the lease to restore, and the question becomes one of a reasonable rate to apply.
On this question the only testimony is that of James J. Walsh, petitioner’s consulting engineer. This witness was an engineer of long experience who qualified .satisfactorily as an expert and also had actual and intimate knowledge of the facilities in question and their length of life as shown by the necessity arising at various times of renewing them.
This witness testified to the length of life of the several classes of depreciable assets, as set out in the findings of fact, and stated that such was the extent of the life of each even when maintained by current repairs, and this testimony appears in all respects to be reasonable and accurate. The rate of 3 per cent depreciation on grading would under ordinary conditions appear to be excessive, but in the present case it was shown that nearly half of petitioner’s line of road was built along the waterfront, the embankment “ rip-rapped ” and subject to the action of the water which undermined it, calling for periodic renewals of the stone work, and we consider the rate under such conditions as reasonable.
We do not agree with petitioner’s insistence that it is entitled to an additional allowance for obsolescence of its road due to the fact that several industries located on it, and from which it formerly received considerable business, are now .shut down and idle. The road is still in operation and is the link between the Santa Fe and Southern Pacific at Richmond, and deep water at Point San Pablo. *1296 The conditions complained of are ones that have decreased petitioner’s earnings, perhaps, although this may be only temporary, but nothing is shown justifying the conclusion that the property is in the process of becoming obsolete.
Petitioner is entitled to a deduction of depreciation on the cost of the several assets involved at the rates found by us, but in computing such allowance these asset accounts should be adjusted by depreciation at those rates from the dates acquired and the allowances for depreciation in respect to each for the taxable years 1919 and 1920 should be limited by the undepreciated balances of cost remaining in those years under such adjustment.
The deficiency should be recomputed in accord with the foregoing findings of fact and opinion.
Reviewed by the Board.

Judgment will be entered under Rule 50.