THE MICHIGAN CENTRAL RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE NEW YORK CENTRAL RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 19930, 19932, 34437, 62040. Promulgated June 20, 1933.

*C. C. Handy, Esq., Charles C. Paulding, Esq.,* and *Leo Manville, Esq.,* for the petitioner.

*E. C. Algire, Esq.,* for the respondent.

OPINION.

SMITH: These proceedings, duly consolidated, are for the redetermination of the following income tax deficiencies:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 19930 | Michigan Central Railroad Co | 1917 | $52,716.03 |
| 19932 | New York Central Railroad Co | 1917 | 15,904.87 |
| 34437 | ___do | 1920 | 1,344,407.19 |
| 62040 | ___do | 1923 | 444,252.06 |

The respondent, having made several affirmative allegations, duly asserts claim to any increase in the deficiencies that may result from our redetermination.

The Michigan Central Railroad Co. is a corporation organized under the laws of the State of Michigan. The New York Central Railroad Co. is a corporation organized under the laws of the State of New York and other states. Both petitioners maintained offices at 466 Lexington Avenue, New York City. At all times material to our determination, the petitioners and their affiliated corporations kept their books on the accrual basis of accounting. The affiliated status of the several railroads involved in these proceedings is not at issue and the deficiencies have been properly asserted against these petitioners.

The respondent admits error, as alleged by the petitioners—

*Docket No. 19930.*

(1) in treating as income the sum of $6,079.79 designated as sidetrack donations;

*Docket No. 19932.*

(2) in treating as income the sum of $31,098.04 designated as sidetrack donations;

(3) in not allowing the deduction of $110,892.46, taxes paid for lessor companies;

(4) in not allowing a depreciation deduction of $2,354.65;

(5) in not allowing the deduction of $7,757.11 for interest;

(6) in not allowing the deduction of $2,942.76 representing the amortization of cost of improvements to Pier 31;

(7) in treating as taxable income the sum of $672, bond premium amortization;

(8) in including in taxable income the sum of $113 interest on United States Government bonds;

(9) in including in taxable income $4,480.19 interest on New York City bonds;

*Docket No. 34437.*

(10) in including in taxable income an undermaintenance item of $7,077.37;

(11) in not allowing the deduction of $54,572.48, the amount of assessment levied by the Association of Railway Executives;

(12) in including in taxable income, $23,096.20 designated as side-track donations;

(13) in including in taxable income $200 designated as sidetrack donations;

(14) in not allowing the deduction of $20,378.18 for taxes paid to the Dominion of Canada by the Michigan Central Railroad Co. for its lessor;

(15) in not allowing credit for the business profits taxes paid to the Dominion of Canada by the Michigan Central Railroad Co. and the New York Central Railroad Co. in the respective amounts of $4,777.01 and $25,803.45;

(16) in not allowing a depreciation deduction of $3,336.13;

(17) in not allowing a depreciation deduction of $16,242.26;

*Docket No. 62040.*

(18) in including in taxable income $451,534.99 representing rental interest on completed additions and betterments received by the Cleveland, Cincinnati, Chicago & St. Louis Railway Co.;

(19) in not allowing a depreciation deduction of $18,621.58;

(20) in not allowing the deduction of $6,741.65 for taxes paid to the Dominion of Canada by the Michigan Central Railroad Co. for its lessor;

(21) in not allowing credit for the business profits taxes amounting to $4,818.33 paid to the Dominion of Canada by the Michigan Central Railroad Co.

---

The petitioners waive the allegations of error respecting:

*Docket No. 19930.*

(22) the disallowance of a deduction of $318.76 for fines and penalties;

(23) the disallowance of a deduction of $404,665.25 "business profits war tax paid in 1917 based on income of petitioner in Canada for the year 1916";

*Docket No. 19932.*

(24) the disallowance of a deduction of $4,475.20 representing 1917 portion of amortization of the cost of a bridge;

*Docket No. 34437.*

(25) the disallowance of a deduction of $4,475.20 representing 1920 portion of amortization of the cost of a bridge;

*Docket No. 62040.*

(26) the disallowance of a deduction of $4,475.20 as depreciation on a bridge.

(27) In Docket No. 34437 the petitioner admits the respondent's affirmative allegation that he erred in allowing the deduction of $646,182.72 for taxes paid by the petitioner for the Mahoning Coal Railroad Co., and that the net taxable income as shown in the notice of deficiency should be increased in the sum of $486,040.99, which is the excess of the amount allowed above the amount of $160,141.73, the taxes actually paid.

(28) In Docket No. 34437 the petitioner admits the respondent's affirmative allegation that he erred in allowing the deduction of $9,004.11 " representing an adjustment of retirements of equipment accounted for during the Federal control period," and that the net taxable income as shown in the notice of deficiency should be increased accordingly.

The parties have agreed upon the settlement of the issues respecting the allowance for depreciation of buildings in the Grand Central Terminal area, as follows:

(29) In Docket No. 19932, covering the year 1917, the respondent concedes the deduction of $115,537.48 and the petitioner withdraws its claim for the deduction of the balance of $79,616.88;

(30) In Docket No. 34437, covering the year 1920, the respondent concedes the deduction of $27,316.88 and the petitioner withdraws its claim for. the deduction of the balance of $11,025.27;

(31) In Docket No. 62040, covering the year 1923, the respondent concedes the deduction of $131,572.64 and the petitioner withdraws its claim for the deduction of the balance of $27,216.88.

(32) In Docket No. 34437, covering the year 1920, the petitioner claimed deductions for taxes and interest paid by the Hudson River Connecting Railroad Corporation during the period of construction in the respective amounts of $2,426.65 and $17,339.19. On brief, the respondent concedes error in not allowing the deduction of these amounts.

(33) In Docket No. 34437, covering the year 1920, the petitioner admits the respondent's affirmative allegation with respect to the computation of the tax liability of the several affiliated corporations, and that the credit for taxes allowed in the deficiency letter should be reduced by $10,182.44, the amount paid by the Director General of Railroads.

(34) and (35) In the amended pleadings in Docket No. 62040, covering the year 1923, the petitioner alleges that the respondent erred in disallowing certain items paid by the Cleveland Union Terminal Co. and charged to contruction in 1932. These allegations are disposed of by the respondent on brief as follows:

Assignments of error (c) and (d) in the amendment to the petition in Docket No. 62040, raise the question of whether the Cleveland Union Terminal Company, a subsidiary of the New York Central Railroad Company, is entitled to deduct taxes and interest paid and discount on bonds amortized during the year 1923 charged to construction, and whether there should be included in taxable income for said year interest received on bank balances and credited to construction. The record shows that this corporation paid taxes during the year 1923, in the amount of $173,318.61, and paid interest on its indebtedness during said year in the amount of $787,762.62. The record also shows that amortization of discount on its bonds applicable to the year 1923, amounted to $14,563.79. All of these amounts were charged to construction * * *. The record further shows that the corporation received $84,960.43, representing interest on bank balances, which amount was credited to construction * * *. The respondent concedes that the foregoing amounts representing taxes and interest paid and discount on bonds amortized, constitute proper deductions in determining consolidated taxable income for the year 1923, and that the foregoing amount of interest on bank balances received should be included in said consolidated taxable income.

## I.

### Clearfield Bituminous Coal Corporation Payment.

(36) In Docket No. 19932 the petitioner alleges that:

(d) The Commissioner erred in refusing to allow as a deduction the sum of $309,244.64 which the petitioner paid to the Clearfield Bituminous Coal Corporation during the year 1917 to make good the operating deficits of that Company for said year in accordance with contract dated November 25, 1911.

In 1911 the New York Central & Hudson River Railroad Co. (referred to in the contract as the "Central Co."), entered into an agreement with the Clearfield Bituminous Coal Corporation (referred to in the contract as the "Coal Corporation"), which, in so far as material here, is as follows:

WHEREAS the Coal Corporation is the owner of certain coal lands in the State of Pennsylvania, and is engaged in the mining of coal from said lands, all of the coal so mined being supplied to the Central Company; and

WHEREAS the Central Company is the owner of all the stock of the Coal Corporation; and

WHEREAS the Coal Corporation has recently acquired certain coal properties in the State of Pennsylvania, known as the Pennsylvania Coal & Coke Company properties, a portion of which coal properties so acquired has, in accordance with the terms·of sale, been leased to the Pennsylvania Coal & Coke Corporation; and

WHEREAS the Coal Corporation believes it to be to its advantage that the remainder of the Pennsylvania Coal & Coke Company properties so acquired should be held by it for future needs and developments, and the Central Company also believes it to be to its advantage as stockholder of the Coal Corporation that the remainder of said lands so acquired should be so held; and

WHEREAS the Pennsylvania Coal & Coke Company properties and the other properties of the Coal Corporation are subject to certain mortgages given as security for the payment of certain bonded indebtednesses and the interest thereon, and by the terms of certain of said mortgages, sinking fund payments are required to be made on account of the principal of certain of said bonded indebtednesses; and

WHEREAS certain annual tax payments are also required to be made by the Coal Corporation; and

WHEREAS it is estimated that the interest on said bonded indebtednesses, and said sinking fund and tax payments will require an annual expenditure by the Coal Corporation in excess of its present annual income; and

WHEREAS, being the owner of all of the capital stock of the Coal Corporation, it is to the interest of the Central Company to protect its holdings from any indebtedness which may be incurred by the Coal Corporation;

NOW, THEREFORE, the parties hereto in consideration of the premises, and for the purpose of providing for the retention by the Coal Corporation of the properties above mentioned for future needs and developments, and for a means of meeting any excess of the interest, sinking fund and tax payments above mentioned over the income of the Coal Corporation, during the time that the said properties are so retained, do hereby agree:

1. That the Coal Corporation shall retain the remainder of the Pennsylvania Coal & Coke Company properties acquired as aforesaid for future needs and developments, and if, during the time that the Coal Corporation shall retain the said properties, the Coal Corporation shall be unable to pay, when due, any of the interest, sinking fund or tax payments above mentioned, the Central Company will, upon request of the Coal Corporation, and to the extent necessary, contribute to the Coal Corporation sufficient moneys to pay the same.

The petitioner, New York Central Railroad Co., assumed the rights and obligations of the foregoing contract upon its creation through the consolidation of the Central Co. and other railroads in 1914. The business of the Coal Corporation consisted of the operation of coal properties and the sale of the coal to the petitioner, the leasing of certain of its properties, and carrying the properties referred to in the above agreement as an investment.

In 1917 the petitioner paid $309,244.64 to the Coal Corporation pursuant to the above agreement. The payment related solely to the carrying of the unused coal lands as an investment. The petitioner's payment is noted in the following statement:

CLEARFIELD BITUMINOUS COAL CORPORATION

Statement of cost of carrying property acquired from the Pennsylvania Coal and Coke Company by Clearfield Bituminous Coal Corpn. for the year 1917

| | | |
|---|---:|---:|
| Royalty Income | $254,987.33 | |
| Rents | 50.95 | |
| Interest on Securities | 3,700.00 | |
| Gross Income | | $258,738.28 |
| Interest on Bonds and Mortgages | $402,728.37 | |
| Real Estate Taxes | 47,377.89 | |
| Federal Tax on Tax Free Bonds | 3,346.65 | |
| Expense (Proportion of salaries a/c supervision, trustee's fees, office expense etc.) | 10,170,01 | |
| Appropriation for sinking funds to retire debt | 114,845.92 | |
| Expense | | 578,468.84 |
| Operating Deficit | | $319,730.56 |
| Cash from New York Central Railroad Company received during 1917, per agreement, applied to 1917 deficit | | 303,086.17 |
| Net remaining deficit | | $16,644.39 |

*Note:* Cash received from the New York Central RR Co. during 1917 totaled $309,244.64

| | |
|---|---:|
| Applied (as above) for 1917 | $303,086.17 |
| Applied a/c prior years | $6,158.47 |

On brief, the petitioner states that:

It was a consistent practice between the Central and the Clearfield Company to make settlements for the deficit incurred in the operation of this property, the Central advancing from time to time during the year funds to enable the Clearfield Company to pay the interest on bonds and mortgages and taxes as these items became due and payable. Then, at the close of the year, the Clearfield submitted a statement of its operating deficit and the balance due the Clearfield was paid by the Central. These settlements were treated in the same manner as an ordinary business transaction between debtor and creditor and we fail to see how the Commissioner can class them as a donation.

Manifestly, the payment of $309,244.64 was not the payment of an ordinary and necessary expense of this petitioner's business, even although it was of a recurring nature. The record is silent as to the terms of the sales of coal by the Coal Corporation to the petitioner. The above agreement specifically provides that the Central Co., being " the owner of all the stock of the Coal Corporation; * * * believes it to be to its advantage " for the Coal Corporation to hold the properties involved " for future needs and developments." The parties to that agreement recognized the expense of holding the coal

properties for future use, and the petitioner's predecessor, in order " to protect its holdings from any indebtedness which may be incurred " in carrying the properties, agreed to make the payment which this petitioner assumed and made in the taxable year now under consideration. The parties to that agreement did not class the payment as one necessary to the production and sale of coal to the petitioner, and beyond the statement in the premise to that agreement that " all of the coal  *  *  *  mined being supplied to the Central Company," there is nothing to indicate the consideration of such a factor. The payment was in the nature of a capital expenditure to protect the petitioner's capital investment in the stock of the Coal Corporation, said investment doubtless being enhanced by the acquisition and retention of the coal properties involved. There is nothing to sustain the claim that this expenditure was an ordinary and necessary expense of this petitioner's business. The respondent's disallowance of the claimed deduction is sustained. Cf. *Isabelle Hammond-Knowlton, Administratrix*, 19 B.T.A. 947; *Athol Mfg. Co.*, 22 B.T.A. 105; affd., 54 Fed. (2d) 230; *W. F. Bavinger*, 22 B.T.A. 1239. See also *Duffy* v. *Central R.R. Co. of New Jersey*, 268 U.S. 55.

## II.

### Payment to State of Illinois upon Issuance of Bonds.

(37) In Docket No. 19932, the petitioner alleged that:

(e) The Commissioner erred in refusing to allow as a deduction the sum of $86,568.09 which represented mortgage taxes paid during the year 1917, by the petitioner in connection with issuance of its Refunding and Improvement mortgage bonds.

In his amended answer the respondent—

(e) Admits that the petitioner is entitled to a deduction for the taxes paid to the State of New York and the State of Michigan in the aggregate amount of $66,568.09 as set forth in subparagraphs 2 and 3 of subdivision (e) of paragraph 5 of the amended petition. Admits that the amount of $20,000.00 was paid to the Public Utilities Commission of the State of Illinois under the provisions of Section 31 of Chapter 111a of the Public Utility Law of the State of Illinois in connection with the issuance of the petitioner's refunding and improvement bonds, but specifically denies that this amount represented taxes and that the amount was paid to the Treasurer of the State of Illinois as alleged in paragraph 1 of subdivision (e) of paragraph 5 of the amended petition, and denies that the Commissioner erred in refusing to allow the said sum of $20,000.00.

During the year 1917 the petitioner paid to " Len Small, Treasurer of the State of Illinois ", $20,000—

For fee of ten cents on each one hundred dollars par value, payable as required by law, for permission from the State Public Utilities Commission of Illinois to issue * * * [$20,000,000] of The New York Central Railroad Company's Refunding and Improvement Mortgage Bonds, Series A.

Section 31 of chapter 111a of the Public Utility Laws of the State of Illinois (Callaghan's Ann. Stats., vol. 7, par. 46, p. 6416), provides in part:

*Fees on issuance of securities.* Sec. 31. The Commission shall charge every public utility receiving permission under this Act for the issue of bonds, notes and other evidences of indebtedness an amount equal to ten cents for every hundred dollars of such securities authorized by the Commission, and the same shall be paid into the State treasury before any such securities shall be issued. * * *

The payments to the States of New York and Michigan, conceded by the respondent to be deductible as taxes, were paid upon the issuance of the same "$20,000,000. Refunding and Improvement bonds." The respondent admitted that the respective payments were made under "section 253 of the Tax Laws of New York State" and a Michigan statute of 1911 "for the assessment and collection of specific tax upon the credits founded upon and evidenced by Mortgages and Liens upon Real Property," etc. It seems anomalous to permit the deduction of two of the three payments levied with respect to the same bond issue, as taxes and deny the deduction of the third as taxes. The respondent contends that the payment to the State of Illinois "constitutes a fee and is consequently an expense incurred in connection with the bond issue and should be amortized over the life of the bonds," citing *Logan-Gregg Hardware Co.*, 2 B.T.A. 647; *Emerson Electric Mfg. Co.*, 3 B.T.A. 932; *Chicago, Rock Island & Pacific Ry. Co.*, 13 B.T.A. 988; affd., 47 Fed. (2d) 990. In *Logan-Gregg Hardware Co.*, *supra*, it was said that the issue—

* * * must be disposed of on the assumption that the sum paid represented a fee and not a tax. * * * The fee is alleged to have been paid for the authorization to increase the capital stock, a capital transaction, and it is therefore not deductible.

The *Emerson Electric Mfg. Co.* case followed the earlier decision; both involved the payment of a fee levied upon the increase of capital stock. The *Chicago, Rock Island & Pacific Ry. Co.* case involved the amortization of expenses incident to a bond issue, but it does not appear that such expenses included such an expenditure as we are here considering.

In *New York Central R.R. Co.* v. *Stevenson*, 277 Ill. 474; 115 N.E. 633, the Supreme Court of Illinois held that to require the payment provided for in section 31, quoted above, upon the issuance of stock to take the place of stock of component companies which

had made similar payments upon incorporation, amounted to "double taxation." The levies under the two acts there considered were discussed as taxes. The court said, *inter alia:*

* * * There is this distinction between the tax required under the Incorporation Fee Act and that required under section 31 of the Public Utilities Act: The payment under the former is exacted of the incorporators before the corporation comes into existence and is a condition precedent to the grant of a corporate franchise, while the tax exacted under section 31 is exacted of and paid by the corporation after it has come into existence. * * *

In *Borg & Beck Co.,* 24 B.T.A. 995, 1004 to 1008, we pointed out that "what the statutes of the state designate a fee may in fact be a tax," citing *Cook County* v. *Fairbank,* 222 Ill. 578; 78 N.E. 895. We there held that a payment to the State of Illinois upon the change in that taxpayer's capital stock constituted the payment of a tax and was deductible as such. That decision followed an earlier one, *Holeproof Hosiery Co.,* 11 B.T.A. 547, wherein the distinction between a fee and a tax was indicated. The *Holeproof Hosiery Co.* case involved a similar payment to the State of Wisconsin. In harmony with those decisions we hold that the payment to the State of Illinois is a tax deductible under section 12 (a) Fourth, of the Revenue Act of 1916, as amended by the Act of October 3, 1917. Cf. *United Gas Improvement Co.,* 25 B.T.A. 1382; affd., 64 Fed. (2d) 957.

### III.

#### *Discount on Bonds Issued by Predecessors.*

The issue with respect to the deductions for discount on bonds issued by predecessor companies is raised by the following pleadings:

#### A.

(38) In Docket No. 19932 the petitioner alleges that:

(f) The Commissioner erred in refusing to allow as a deduction the 1917 proportion of discount on bonds issued by predecessor companies of the petitioner in the sum of $401,161.13.

(39) and (40) The same allegation is made in Docket Nos. 34437 and 62040 covering the taxable years 1920 and 1923.

#### B.

(41) In Docket No. 19932 the petitioner alleges that:

(g) The Commissioner erred in refusing to allow as a deduction the 1917 portion of discount on Equipment Trust Certificates sold January 1, 1913, and December 1, 1913, in the sum of $10,910.62.

(42) In Docket No. 34437 the petitioner alleges that:

(i) The Commissioner erred in not allowing as a deduction the 1920 portion of discount on Equipment Trust Certificates sold during January, 1913, and December, 1913, by predecessor companies in the sum of $7,937.14.

(43) At the hearing, the pleadings in Docket No. 62040 were amended to allege that:

The Commissioner erred in disallowing the deduction of $4,960.68 representing the portion of the discount on equipment trust certificates issued by predecessor companies of the petitioner, applicable to the year 1923.

## C.

(44) In Docket No. 62040 the petitioner alleges that:

(j) The Commissioner erred in holding that the amount of $5,764.05 which represented the portion of discount on bonds issued by predecessor companies of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, is an unallowable deduction for the year 1923.

## D.

(45), (46), (47), and (48), in Docket Nos. 19932 and 34437 the respondent affirmatively alleges that he erroneously allowed the deduction of $72,765 in each of the years 1917 and 1920, claimed by the petitioner as amortization of discount on the bonds of Cleveland Short Line Railroad Co. and the Jamestown, Franklin & Clearfield Railway Co. In the alternative, the respondent alleges that if the petitioner is entitled to any deduction on account of the aforesaid discount, the deduction should be limited to $29,518.97 in each year.

---

## A.

In each of the taxable years 1917, 1920, and 1923 the petitioner claims the deduction of the yearly amortization of the discount upon certain bonds, as follows:

| | Par value issued | Discount | Date issued | Yearly amortization |
|---|---|---|---|---|
| N.Y.C. & H.R.R.R. Co. 4% gold deb. of 1904 due May 1, 1934. | $43,000,000 | $2,825,000 | Aug., 1904, to July, 1908. | $103,326.96 |
| N.Y.C. & H.R.R.R. Co. 4% gold deb. of 1912 due Jan. 1, 1942. | 9,188,000 | 455,040 | Feb., 1912; Feb., 1913. | 15,307.44 |
| N.Y.C. & H.R.R.R. Co. 3½% gold mtg. bonds due July 1, 1997. | 5,000,000 | 625,000 | Jan. 1, 1912 | 7,309.93 |
| N.Y.C. & H.R.R.R. Co. 4½% R. & I. mtg. bonds due Oct. 1, 2013. | 40,000,000 | 3,000,000 | Apr. 16, 1914 | 30,163.44 |
| Lake Shore & Mich. So. Ry. Co. gold mtg. of 1897 due June 1, 1997. | 30,570,000 | 4,250,000 | 1897 to 1902 | 42,667.38 |
| Lake Shore & Mich. So. Ry. Co. 25 yr. 4% gold bonds of 1903 due Sept. 1, 1928. | 50,000,000 | 1,600,000 | Feb., 1904, to Oct., 1905. | 65,106.36 |
| Lake Shore & Mich. So. Ry. Co. 25 yr. 4% gold bonds of 1906 due May 1, 1931. | 50,000,000 | 2,073,478 | Apr., 1906, to May, 1911. | 93,531.24 |
| Chicago Ind. & So. R.R. Co. 4% gold bonds due Jan. 1, 1956. | 15,150,000 | 1,363,500 | Apr. 21, 1908, to Aug. 22, 1908. | 28,748.38 |
| Ind. Ill. & Iowa R.R. Co. 4% 1st mtg. due July 1, 1950. | 4,850,000 | 750,000 | July 1, 1900 | 15,000.00 |
| Total | | | | 401,161.13 |

In computing the yearly portion of discount on all of the above bonds, the total discount of each issue was divided by the term of the bonds to obtain such yearly portion. The companies that issued these bonds charged the discount to surplus at the close of the year during which the bonds were issued, except the Indiana, Illinois & Iowa Railroad Co., which charged the discount to cost of road.

In 1906 the Indiana, Illinois & Iowa Railroad Co. and several other corporations were consolidated to form the Chicago, Indiana & Southern Railroad Co., which assumed the obligation on the bonds in question. In 1914 the Chicago, Indiana & Southern Railroad Co., the Lake Shore & Michigan Southern Railway Co., the New York Central & Hudson River Railroad Co., and other corporations were consolidated to form the New York Central Railroad Co. (the petitioner), which assumed the obligations upon the bonds in question. The petitioner did not set up any discount on these bonds in its books of account, but set up assets equal to the total liability on the bonds assumed.

## B.

In 1913 the New York Central & Hudson River Railroad Co. issued certain equipment trust certificates at a discount. The discount was charged to profit and loss upon the books of the issuing company. The obligation upon the equipment trust certificates was assumed by the petitioner upon the consolidation in 1914. The equipment trust certificates mature serially and the amounts claimed as discount are determined from the petitioner's records and in accordance with the Bureau's method of computing discount on serial bonds. The amounts claimed as deductions for the respective years are:

| | |
|---|---|
| 1917 | $10, 910. 62 |
| 1920 | 7, 937. 14 |
| 1923 | 4, 960. 68 |

## C.

The record does not clearly show the facts regarding the issuance of bonds by the predecessors of the Cleveland, Cincinnati, Chicago & St. Louis Railway Co. (petitioner's affiliate). It appears that that company set the discount up on its books, and that the amount of $5,764.05 is the portion of the discount applicable to the year 1923.

## D.

Prior to 1914 the entire capital stock of the Cleveland Short Line Railroad Co. and the Jamestown, Franklin & Clearfield Railway Co.

was owned by the Lake Shore & Michigan Southern Railway Co., which in that year was consolidated with other companies to form the New York Central Railroad Co. (petitioner). Upon the consolidation, the capital stock of the Cleveland Short Line Railroad Co. and the Jamestown, Franklin & Clearfield Railway Co. became the property of the petitioner and the said railroads were merged with the petitioner.

During the year 1909 the Jamestown, Franklin & Clearfield Railway Co. issued its first mortgage 4 percent bonds, dated June 1, 1909, due June 1, 1959, having a face value of $11,000,000, to the Lake Shore & Michigan Southern Railway Co. at 80 percent of face value in settlement of advances made to it by the latter company.

The Lake Shore & Michigan Southern Railway Co. guaranteed the payment of the aforesaid bonds both as to principal and interest, and during March 1910, sold them to J. P. Morgan & Co. at 93 percent of face value or for the sum of $10,230,000.

During the year 1911 the Cleveland Short Line Railroad Co. issued its first mortgage 4½ percent bonds dated April 1, 1911, due April 1, 1961, having a face value of $7,000,000, to the Lake Shore & Michigan Southern Railway Co. at 80 percent of face value in settlement of advances made to it by the latter company.

During the year 1913 the Cleveland Short Line Railroad Co. issued its aforesaid bonds having a face value of $1,275,000 to the Lake Shore & Michigan Southern Railway Co. at 97 percent of face value in settlement of advances made to it by the latter company.

During the year 1913 the Cleveland Short Line Railroad Co. issued its aforesaid bonds having a face value of $3,525,000 to the Lake Shore & Michigan Southern Railway Co. at par in exchange for the latter company's preferred capital stock having a par value of $3,525,000.

The Lake Shore & Michigan Southern Railway Co. guaranteed the payment of the aforesaid bonds of the Cleveland Short Line Railroad Co., both as to principal and interest. During September 1913, it sold to J. P. Morgan & Co. $5,000,000 face value of said bonds at 91 percent of face value or for the sum of $4,550,000, and $2,350,000 face value thereof at 91½ percent of face value or for the sum of $2,150,250. During February 1914. it sold $4,450,000 face value of said bonds to J. P. Morgan & Co. at 93½ percent of face value or for the sum of $4,160,750.

The yearly amortization of the discount upon the issuance and upon the sale of the above bonds is $72,765 and $29,518.97, respectively. The companies issuing these bonds charged the discount to profit and loss for the year during which the bonds were issued.

The petitioner claimed, and the respondent allowed, as a deduction, the amount of $72,765 as amortization of the discount upon these bonds.

## A, B, C, and D.

In *Missouri Pacific R.R. Co.*, 22 B.T.A. 267, 287, 289, we considered the issue at bar, and, despite the reversal of our earlier decision in *Western Maryland Ry. Co.*, 12 B.T.A. 889, by the Circuit Court of Appeals for the Fifth Circuit (36 Fed. (2d) 695), adhered to our earlier ruling sustaining "the Commissioner in refusing to allow any deduction for amortization of discount upon bonds issued by the preceding owner of the property now owned by petitioner." That ruling was also followed in *Southern Ry. Co.*, 27 B.T.A. 673. The issue at bar is controlled by those decisions and judgment will be entered accordingly.

## IV.

### *Deductions for Depreciation and Retirement of Leased Equipment and Property.*

The issue with respect to deductions on account of leased equipment and property is raised by the following pleadings:

## A.

(49) In Docket No. 19932 the respondent affirmatively alleges that he erroneously allowed deductions of $44,119.72 as depreciation and $50,384.10 as loss on retirements of equipment leased from the Boston & Albany Railroad Co. The petitioner claims that if it is not entitled to the deductions allowed by the respondent, it should be allowed a deduction of $117,061.14 for the inventory value of the Boston & Albany Railroad Co. equipment which was retired from service during the year 1917.

(50) In Docket No. 34437 the respondent affirmatively alleges that he erred in allowing in 1920 a similar deduction of $32,771.55 with respect to this leased equipment. The parties have agreed that $1,892.30 of this amount represents depreciation on additions and betterments made by the petitioner, and as such is deductible. The petitioner claims that if it is not entitled to the deductions allowed by the respondent, it should be allowed a deduction of $38,834.79 for the inventory value of Boston & Albany Railroad Co. equipment which was retired from service during the year 1920.

(51) In Docket No. 62040 the petitioner alleges that the respondent erred in disallowing the deduction of $51,499.95 " representing depreciation and retirements " on the leased Boston & Albany Railroad Co. equipment; and, in the alternative, that " it is entitled to take as a deduction in the year 1923 the sum of $84,007.69 which represents the inventory value of the equipment which became obsolete and was retired from service during that year."

## B.

(52) In Docket No. 19930 the respondent affirmatively alleges that he erroneously allowed deductions of $64,719.35 as depreciation and $14,684.06 as loss on retirements of equipment leased by the Michigan Central Railroad Co. from the Canada Southern Railway Co. The petitioner claims that if it is not entitled to the deductions allowed by the respondent, it should be allowed a deduction of $32,679.50, the inventory value of the leased equipment retired in 1917.

(53) In Docket No. 34437 the respondent affirmatively alleges that he erred in allowing similar deductions of $52,325.09 as depreciation and $9,813.19 as loss on retirement, a total of $62,138.28, in determining consolidated net income for 1920. The parties have agreed that $1,648.25 of this amount represents depreciation on additions and betterments and as such is deductible. The petitioner claims that if it is not entitled to the deductions allowed by the respondent, it should be allowed a deduction of $46,817.60, the inventory value of the Canada Southern Railway Co. equipment retired from service in 1920.

(54) In Docket No. 62040 the petitioner alleges that the respondent erred in disallowing the deduction of $38,238.89 " which represents depreciation and retirements " on the leased Canada Southern Railway equipment; and, in the alternative, that " it is entitled to a deduction in the year 1923 for the sum of $107,744.49 which represents the inventory value of the equipment which became obsolete and was retired from service during that year."

## C.

(55) In Docket No. 62040 the petitioner alleges that the respondent erroneously disallowed the deduction of $36,512.82, representing depreciation and retirements on equipment leased from the Chicago Junction Railway Co., by the petitioner's affiliate, the Chicago River & Indiana Railroad Co.; and, in the alternative, that there should be allowed the deduction of $9,452.07 which represents the inventory

value of such equipment which became obsolete and was retired from service in 1923.

(56) In Docket No. 62040 the petitioner alleges that the respondent erroneously disallowed the deduction of $35,950.51, representing depreciation on road property, and $9,932.46, representing depreciation on additions and betterments made to the property, leased from the Chicago Junction Railway Co. by the petitioner's affiliate.

---

## A.

On November 15, 1899, the New York Central & Hudson River Railroad Co. leased from the Boston & Albany Railroad Co. all of its railroad properties for a term of 99 years from July 1, 1900. The properties were taken over and operated pursuant to the terms of the lease by the lessee, and upon the consolidation in 1914 the petitioner assumed the obligations of the lease and has since operated the leased properties. The lease contains the following provision with respect to the return of these properties to the lessor upon the termination of the lease:

* * * The lessee, at the expiration or earlier termination of this lease, will return the demised road and property with all improvements and additions thereon to the lessor as a railroad between Boston and the Hudson River, with its branches, in all respects in as good condition as to its road, road-bed, bridges, lands, wharves, yards, terminal facilities, depots, stations, shops, and other structures, and as to its rolling stock, machinery, materials, tools, appliances and equipment, and other property and rights, real and personal, as the same now are or may be put in during the continuance of this lease and so that there shall be no depreciation in the same or any part thereof, and will also return or deliver in lieu of the personal property set out in the inventory hereinafter provided to be made, the same or other personal property of similar character, value and uses, and appropriate for the operation of the lessor's railroads.

The parties to said lease made an inventory of the equipment in accordance with the provisions of the lease, and determined that the value of the equipment at that time amounted to the sum of $4,213,674.92. In July 1901, petitioner's predecessor charged this amount on its books to an account for equipment acquired from Boston & Albany Railroad Co., lessor, and offset the same with an account for liability to lessor company for equipment acquired. In 1907, pursuant to the classification of balance sheet accounts promulgated by the Interstate Commerce Commission, petitioner's predecessor transferred the item to account 701, Investment in Equipment, and the liability is still carried as a liability to lessor company for equipment acquired.

When it was necessary to replace any equipment leased from the Boston & Albany Railroad Co., the petitioner replaced it currently with equipment out of its own funds, and as to such replacements the respondent has consistently allowed depreciation as well as loss upon retirement of such equipment. Depreciation has been computed at the rate of 2½ percent on the inventory value of the leased equipment in service during the tax year. The losses on retirements represented the portion of the inventory value of equipment not covered by accruals for depreciation at the time it went out of service during the tax year.

The depreciation on, the loss upon retirements, and the inventory value of the leased Boston & Albany Railroad Co. equipment, follows:

| Year | Depreciation | Loss upon retirement | Inventory value |
|---|---|---|---|
| 1917 | $44,119.72 | $50,384.10 | $117,061.14 |
| 1920 | 25,302.00 | 5,577.25 | 38,834.79 |
| 1923 | [1] 51,499.95 | | 84,007.69 |

[1] No allocation between depreciation and loss.

The amounts shown above for depreciation and loss upon retirements were claimed as deductions in the respective years.

### B.

On August 15, 1903, the Michigan Central Railroad Co. leased from the Canada Southern Railway Co. all of its properties for a term of 999 years from January 1, 1904. The properties were taken over and operated pursuant to the terms of the lease by the lessee, the Michigan Central Railroad Co. The lease contains the following provision with respect to the return of these properties to the lessor upon the termination of the lease:

EIGHTH: That it will during the continuance of this Indenture keep and maintain in use on the demised premises an adequate equipment of rolling stock, adapted for railroad business, that upon the termination of this Indenture, by default or otherwise, the Canada Company shall be put in possession of rolling stock and other railroad equipment of the same character and of equal value as that hereby leased to the Michigan Company, and that for better securing the Canada Company the full performance of this covenant an inventory and appraisement of the locomotives, cars and other movable property, machinery and tools leased shall be made and completed before the date when this Indenture is to take effect, and the said inventory and appraisement shall be identified by the respective signatures of the Presidents of the parties hereto, and shall be considered part of this Indenture, it being always understood, however, that while and so long as the railways covered by this Indenture are

adequately stocked and supplied the Michigan Company is to have the right to use the rolling stock and other equipment hereby leased in its general business over any or all of the railways which it may now or hereafter operate.

The Michigan Central Railroad Co. charged off depreciation at the rate of 2½ percent on the equipment leased from the Canada Southern Railway Co., and when a piece of equipment was retired it set up a liability to the lessor for the inventory value of the retired equipment. Offsetting that is the depreciation reserve for the amount of depreciation accrued up to the time of retirement, and the balance is charged to operating expenses and profit and loss as required by the Interstate Commerce Commission's classification of accounts.

Depreciation on leased equipment is based upon the inventory value at the time of the lease. The loss on retirements represents the portion of the inventory value of equipment not covered by depreciation at the time said equipment goes out of service.

The depreciation on, the loss upon retirements, and the inventory value of the leased Canada Southern equipment, follows:

| Year | Depreciation | Loss upon retirement | Inventory value |
|------|-------------|---------------------|-----------------|
| 1917 | $64,719.35 | $14,684.06 | $32,679.50 |
| 1920 | 50,676.84 | 9,813.19 | 46,817.60 |
| 1923 | 1 38,238.89 | ------------ | 107,744.60 |

1 No allocation between depreciation and loss.

The amounts shown above for depreciation and loss upon retirements were claimed as deductions in the respective years.

## C.

On May 19, 1922, the Chicago River & Indiana Railroad Co. (petitioner's affiliate) leased from the Chicago Junction Railway Co. all of the latter's railroad properties for a term of 99 years, and thereafter in perpetuity at the option of the lessee. The properties were taken over and operated pursuant to the terms of the lease, which contains the following provision with respect to the return of the properties to the lessor upon the termination of the lease:

The River Company covenants that it will maintain the premises and properties (including all equipment) by this instrument demised, in good operatable condition and repair and from time to time renew and replace the improvements thereon and the said equipment or make equivalent substitution therefor and, at the termination of the term of this lease, or of any extension thereof, whether by expiration or otherwise, except in the instance of expiration resulting from or arising by the exercise of the option of purchase provided for in Article XII hereof, will deliver and return the same to the Junction Company in as good order and condition as when received, ordinary wear

and tear (with reasonable care and reasonable renewals and replacements) excepted; * * *

It was the practice of the Chicago River & Indiana Railroad Co., and the Chicago Junction Railway Co. as well, to accrue depreciation on property such as buildings, water tanks, bridges, and structures, but not roadway, and such practice was continued by the Chicago River & Indiana Railroad Co. subsequent to said lease. Such method of accounting was permitted though not required under the accounting rules of the Interstate Commerce Commission. The same practice existed and was followed with respect to the equipment demised by the lease.

The accounting procedure of the Chicago River & Indiana Railroad Co. with respect to said equipment was to set up in its books a liability to the Chicago Junction Railway Co. for the inventory value of equipment as it goes out of service in any particular year, offsetting that by a charge to the depreciation reserve thus far accrued, and the balance to operating expenses as retirements or profit and loss, as applicable, in accordance with the Interstate Commerce Commission's classification of accounts. The liability set up by the Chicago River & Indiana Railroad Co. to the Chicago Junction Railway Co. as equipment goes out of service is handled not as a separate item, but as a credit to account 702 for improvements made by the Chicago River & Indiana Railroad Co. on the leased property during the particular year.

During the year 1923 the Chicago River & Indiana Railroad Co. was affiliated with the petitioner and in the consolidated return filed for that year there were deductions with respect to the leased Chicago Junction Railway Co. properties as follows: $35,950.51, representing depreciation of roadway properties; $28,446.35, representing depreciation of equipment; and $8,066.47, representing loss on retirements of equipment.

The inventory value of the leased equipment retired from service in 1923 was $9,452.07.

---

## A, B, and C.

The petitioner's claims for deductions of amounts representing depreciation and loss upon retirements of leased equipment and property, or, in the alternative, the inventory value of such equipment retired in the respective taxable years, must be denied. The lessees had no capital investment in the leased properties involved. As was said in *Tunnel R.R. of St. Louis* v. *Commissioner*, 61 Fed. (2d) 166, 174, " It may be that to all practical purposes, the petitioner is

the owner, but no portion of the capital investment &ast; &ast; &ast; has been paid for by the petitioner [lessee]."

While the facts involved in *Weiss* v. *Wiener*, 279 U.S. 333, may be distinguishable, the principle of that case was applied in *Tunnel R.R. of St. Louis* v. *Commissioner*, *supra*, by the Circuit Court of Appeals for the Eighth Circuit, and by this Board (17 B.T.A. 185), to railroad properties under leases like those involved in these proceedings. The respondent's determination is sustained and his affirmative allegations allowed. Cf. *Richmond Belt Ry. Co.*, 13 B.T.A. 1291; *Terminal Railroad Assn. of St. Louis*, 17 B.T.A. 1135, 1172; *Terre Haute, Indianapolis & Eastern Traction Co.*, 24 B.T.A. 197, 210.

## V.

### *Railway Mail Pay.*

(57) The next issue is whether the payments received by the petitioner as back railway mail pay constitute taxable income in 1920 or in the respective years of payment. The facts on this issue are admitted.

The petitioner and its affiliated corporations, the Toledo & Ohio Central Railway Co., the Zanesville & Western Railway Co., and the Chicago, Kalamazoo & Saginaw Railway Co., received $1,778,-661.65 in 1920 and $57,921.15 in 1921 in consequence of Decision 9200 by the Interstate Commerce Commission, Railway Mail Pay, 56 I.C.C. 1, interpreting the provisions of sections 5 and 6 of the Act of Congress, approved July 28, 1916, Post Office Department Appropriation, 39 Stat. 412, 425. The said Decision 9200 was rendered on December 23, 1919, but was not served on the interested parties or made public until January 15, 1920.

The amounts of railway mail pay received by the petitioner and its affiliates in 1920 and 1921 were accrued upon their books in the respective years of receipt and reported in the consolidated returns for those years. In determining the deficiencies, the respondent eliminated the amount reported for 1920 and now claims that he erred in so doing, and that both the amount received in 1920 and the amount received in 1921 should be included in consolidated net income of 1920.

In *International-Great Northern R.R. Co.*, 24 B.T.A. 726, the Board held that similar railway mail payments to that carrier constituted income in the year of receipt. In *Pittsburgh & Lake Erie R.R. Co.*, 28 B.T.A. 259, we reexamined our earlier decision, pointing out the effect of Decision 9200, and the reasonableness of the Interstate Commerce Commission's regulations for the accrual of

these items as income in the year of receipt. We believe the petitioner and its affiliates properly accrued and reported as income the amounts received in 1920 and 1921. We accordingly hold that the respondent erred in eliminating the amount received in 1920 from the consolidated net income of that year; his affirmative allegation is allowed to that extent.

## VI.

### Rental Interest.

(58), (59), and (60) In Docket No. 62040 the petitioner alleges that the respondent erred in holding as taxable income for the year 1923, amounts representing rental interest on completed additions and betterments received in final settlement from the Director General of Railroads for the period of Federal control. (61) In the event the petitioner's allegation is sustained, the respondent affirmatively alleges (in Docket No. 34437) that the amount of such rental interest applicable to the two months of Federal control in 1920 should be added to the consolidated net income of that year.

During the year 1923 the petitioner and affiliated corporations received from the Director General of Railroads, in the final settlement for the period of Federal control, payments representing rental interest on completed additions and betterments as follows:

| | |
|---|---|
| New York Central Railroad Co | $2, 814, 337. 31 |
| Michigan Central Railroad Co | 887, 519. 72 |
| Cincinnati Northern Railroad Co | 16, 670. 43 |

The respondent has included these amounts in consolidated net income for 1923.

The portions of the above amounts applicable to the period of Federal control in 1920 are as follows:

| | |
|---|---|
| New York Central Railroad Co | $367, 746. 14 |
| Michigan Central Railroad Co | 115, 550. 46 |

Except for the facts relating to the payment received by the Cincinnati Northern Railroad Co., the parties are in agreement as to the above items. The petitioner in its original petition erroneously used an item representing quarterly interest upon balances applicable to the year 1923. At the hearing upon the petitioner's motion to amend the pleadings in this and other respects, the petitioner was allowed to amend and the above amount of $16,670.43 was substituted, and the respondent conceded error to the extent of $2,564.72 of the corrected amount, since that much of the rental interest had been taxed to the Cincinnati Northern Railroad Co. in the settlement of that

taxpayer's liability for 1920. The Cincinnati Northern Railroad Co. was not affiliated with the petitioner in 1920 and hence its tax liability for that year is not before the Board.

The parties agree that the issue is controlled by our decision in *Texas & Pacific Ry. Co.*, 9 B.T.A. 365. We accordingly hold that the respondent erred in including the amounts representing rental interest on additions and betterments in the consolidated income of 1923, and that his affirmative allegations with respect to the admitted amounts applicable to the period of Federal control in 1920 should be allowed. See also *International-Great Northern R.R. Co.*, supra; *Union Pacific R.R. Co.*, 26 B.T.A. 1126; *Pittsburgh & Lake Erie R.R. Co.*, supra.

## VII.

### *Payment to Association of Railway Executives.*

(62) The petitioner alleges that the respondent erred in disallowing the deduction of $13,190.54 which it paid to the Association of Railway Executives in 1923 (Docket No. 62040).

During the year 1923 the petitioner paid the above sum as its proportion of an assessment levied by the Association of Railway Executives upon all of the railroads of the country for the purpose of establishing at Yale University a chair of transportation in honor of the late Thomas DeWitt Cuyler.

The petitioner contends that the deduction should be allowed—

* * * because the apparent purpose was to promote education and instruction in the subject of transportation, thus serving the business of the railroads and creating an intangible benefit to them, much the same as the varied forms of advertising or business promotion.

The respondent argues that the payment " was made for a specific purpose which did not result in a benefit to the corporation," citing *Los Angeles & Salt Lake R.R. Co.*, 18 B.T.A. 168. The respondent points out that:

* * * The evidence fails to show that the payment was made by the petitioner with the expectation that any direct or indirect benefit to the corporation would result, or that it did in fact receive any benefit from the expenditure. * * *

The facts of record pertaining to this issue are not sufficient to enable us to determine the extent of the benefit, if any, flowing to this taxpayer from the expenditure in question. Cf. *American Rolling Mill Co.* v. *Commissioner*, 41 Fed. (2d) 314. In the circumstances we leave the parties as we found them. Cf. *Los Angeles & Salt Lake R.R. Co.*, supra; *Texas & Pacific Ry. Co.* v. *United States*, 52 Fed. (2d) 1040.

## VIII.

### *Profit on Real Estate.*

(63) The petitioner alleges that the respondent erroneously included in taxable income for 1923 the amount of $134,051.41, alleged profit on sale of real estate (Docket No. 62040). (64) The respondent affirmatively alleges, in the alternative, that if the above amount did not constitute income in 1923, a portion thereof was taxable income in 1917 (Docket No. 19932).

By indenture of lease dated November 20, 1922, the petitioner leased to the Inland Steel Co. certain land at East Chicago, Indiana, for a term of 999 years " from and after the first day of January, 1923." The rental of $58,900 for the entire term was paid in advance to the petitioner, and the amount thereof was credited to profit and loss upon the petitioner's books in 1923. The leased land cost the petitioner $7,339.74 in 1902.

During the year 1917 the petitioner's ore docks at Ashtabula, Ohio, were abandoned and the salvage recovered therefrom amounted to $82,491.15. This amount was credited to a suspense account in 1917 and carried therein until 1923, when it was credited to profit and loss.

In the statement attached to the deficiency notice is the following explanation of the respondent's determination with respect to the items in controversy:

(g) Profit on sale of real estate.

Profit on sale or other disposition of the following property credited to account "Miscellaneous Credits" and reported as nontaxable income on your return has been restored to taxable income for the reason that no evidence has been submitted to establish the nontaxability of this profit.

| | |
|---|---|
| Salvage account abandoning docks 1 and 7, Ashtabula, Ohio_____ | $82,491.15 |
| Lease of land to Inland Steel Company, Indiana Harbor, Indiana__ | 51,560.26 |
| Total restored to taxable income_____ | $134,051.41 |

In his answer the respondent admitted that he had " included in taxable income for 1923 an amount of $51,560.26 on account of disposition of land," but denied other alleged facts.

In his suggested findings with respect to the Inland Steel Co. item, the petitioner states that " the evidence fails to show why the respondent reduced the amount of $58,900 to $51,560.26." Apparently that was done by treating the transaction as a sale and deducting the cost of the property ($58,900 minus $7,339.74 equals $51,560.26).

The petitioner very properly points out that " there was not a sale of the property, as title is still vested in petitioner." In explanation

of the low rental, the petitioner offered testimony showing that it was necessary to retain the property for railroad purposes, and that it would benefit by even a nominal rental by reason of the tonnage it might derive from an industry located on the property; perhaps these were the motivating considerations for the lease. Although the item in question was designated as rent for the entire term of the lease, there is nothing in the lease to indicate that in the event of its termination before the end of the term the lessee would be refunded any portion of the $58,900. Then, too, the petitioner treated this amount as income of 1923 upon its books. That sum was unqualifiedly paid over to the petitioner in 1923. In these circumstances we hold that the entire amount constitutes income in 1923. Cf. *Jennings & Co.*, 21 B.T.A. 381; affd., 59 Fed. (2d) 32; *Andrew J. Pembroke*, 23 B.T.A. 1176; *Marvin H. Gates, Trustee*, 26 B.T.A. 998.

The salvage item, according to the testimony which we have no reason to doubt, " represents an accounting adjustment " in 1923. The witness testified that " it is just one of those delayed accounting items that on a big railroad it is inevitable that someone will split occasionally and omit." We are satisfied that such was the case, and, since bookkeeping entries or adjustments do not of themselves create income even on the accrual basis, hold that the respondent erred in including this salvage item in the petitioner's 1923 income. Cf. *Fibre Yarn Co.*, 10 B.T.A. 479; *Luther Elkins*, 12 B.T.A. 1058; *Worstell Co., Ltd.*, 15 B.T.A. 413.

In the alternative the respondent affirmatively alleges that the amount of $82,491.15, representing the salvage recovered from the abandoned ore docks, constitutes income in 1917. The respondent has offered no evidence to support his affirmative allegation, and there is nothing in the record to show the petitioner's capital investment in the abandoned property, or that the sum in question was a realized gain upon the disposition of such properties. We can not determine whether this sum, plus the sustained depreciation, was more or less than petitioner's capital investment in the profit. If this was a mere return of the undepreciated cost of the abandoned properties, it was a return of the petitioner's capital investment, and hence not the receipt of income under the rule of *Burnet* v. *Logan*, 283 U.S. 404. The respondent has failed to sustain his burden of proof and his affirmative allegation that this item constitutes income in 1917, falls.

## IX.

### *Depreciation Adjustment.*

(65) The remaining issue is whether the Commissioner erred in including in the 1923 consolidated income $6,359.96 " which represented depreciation on property retired in 1918 by the Michigan Central Railroad Co."

The evidence with respect to this item is similar to that submitted with respect to the accounting adjustments on the items under the next preceding point in controversy. These adjustments did not create taxable income in 1923, and if any income was realized by the petitioner or its affiliate it was in the year in which the transaction took place—1918, a year not before us. In these circumstances, the item should be eliminated from the consolidated net income of 1923.

*Judgment will be entered under Rule 50.*