(No. 11148.—Decree affirmed.)

The New York Central Railroad Company, Appellee,
*vs.* Lewis G. Stevenson, Appellant.

*Opinion filed February 21, 1917—Rehearing denied April 6, 1917.*

1. Public utilities—*extent of the authority of the Public Utilities Commission over public utility corporations.* Under the Public Utilities act the Public Utilities Commission has supervision of the issuance of stocks and other evidences of indebtedness of public utility corporations and may control the consolidation of one public utility with another, and no public utility can transact any business until it has obtained from the commission a certificate of convenience and necessity; but the Public Utilities act does not give the commission any power to grant corporate franchises.

2. Same—*prior to the Public Utilities act a grant of a corporate franchise included the right to issue full amount of capital stock.* Prior to the passage of the Public Utilities act the grant of corporate franchises by the State to all corporations for pecuniary profit included the right to issue the full amount of the authorized capital stock, but since the passage of said act the grant of the right to be a public utility no longer carries with it the unqualified right to issue stock but such right is subject to the control of the Public Utilities Commission.

3. Same—*section 31 of Public Utilities act repeals former statutory provision for incorporation fees of public utilities.* Section 31 of the Public Utilities act repeals by implication, so far as public utility corporations are concerned, the former statutory provisions for the payment of fees for issuing or increasing the capital stock of corporations.

4. Statutes—*when a statute will be repealed by implication.* It is the duty of courts to so construe acts that both shall be operative, and to justify holding that a subsequent provision repealed a former one by implication there must be repugnance between the two acts; but repeals by implication, although not favored, are not necessarily within any prohibition of the constitution.

5. Same—*that construction of a statute will be adopted which it may be reasonably assumed was contemplated.* The primary object in construing statutes being to give effect to the true intent and meaning of the legislature, courts will presume that absurd consequences or those leading to great injustice were not intended and a construction will be adopted which it may reasonably be assumed was contemplated.

6. Same—*when earlier statute will be in part superseded by the provisions of a later act.* Where the effect of a later statute is not to entirely abrogate a former one but merely to withdraw from the operation of the former act a portion of the cases included within its terms, leaving it in force as to cases not provided for by the later law, the earlier act will be in part superseded by the effect of the provision of the later statute.

7. Same—*statute will not be construed to provide double taxation unless clearly intended.* Double taxation will never be presumed in construing statutes, and before that effect will be given a statute it must unmistakably appear that the legislature so intended it.

Appeal from the Circuit Court of Sangamon county; the Hon. James A. Creighton, Judge, presiding.

P. J. Lucey, Attorney General, and Thos. E. Dempcy, for appellant.

Edward T. Glennon, Robert J. Cary, and Bertrand Walker, (George B. Gillespie, of counsel,) for appellee.

Mr. Justice Farmer delivered the opinion of the court:

The New York Central Railroad Company came into being as a corporation through a consolidation agreement entered into April 29, 1914, between eleven different railroad companies, two of which were corporations organized under the laws of Illinois. Said two Illinois corporations, the Lake Shore and Michigan Southern Railway Company and the Chicago, Indiana and Southern Railroad Company, in May, 1914, presented their joint petition to the State Public Utilities Commission of Illinois asking leave to consolidate with the other nine railroad corporations. On the 22d day of December, 1914, the commission entered an order approving the proposed consolidation and granting the prayer of the petition. The petitioning companies thereupon paid into the State treasury, pursuant to the requirements of section 31 of the Public Utilities act and the order of the commission, $249,590.46, the same being an amount

equal to ten cents for every $100 of the capital stock of the proposed consolidated corporation, which the commis-. sion, pursuant to the prayer of the petition, authorized to be issued upon the completion of the organization of the new corporation. On the day this order was made by the utilities commission said two Illinois corporations presented to the Secretary of State, for filing and recording in his office, the articles of consolidation and for the organization of the new corporation. They tendered the Secretary of State a filing fee of one dollar. The Secretary of State refused to accept, file and record the papers until he was paid the fee provided for by sections 10a and 10b of chapter 53 of Hurd's Statutes of 1916. The capital stock specified in the articles of the proposed corporation was $300,000,000, and the fee to be paid, if the above statute applied, was $300,045. The said petitioning companies protested against being required to pay said sum on the ground that the statute relied on by the Secretary of State did not apply in this instance and that the payment of said sum was not required by law. The Secretary of State persisted in his refusal to receive, file and record the articles unless the sum demanded was paid, whereupon the said sum of $300,045 . was paid under a stipulation, by the terms of which the Secretary of State agreed to hold said sum until the second Wednesday of January, 1915, on which date, unless enjoined by a court of competent jurisdiction, he would pay it into the State treasury. In the event of being enjoined he agreed to hold said sum subject to the final determination and order in the case. Upon the payment of said sum to the Secretary of State he received, filed and recorded the articles effecting the incorporation of the New York Central Railroad Company, and it thereupon filed the bill in this case to enjoin the Secretary of State from paying said fee into the State treasury and to require him to account for and pay the same over to complainant. The Secretary of State demurred to the bill. The demurrer was

overruled, and defendant not further answering, a decree was entered in accordance with the prayer of the bill, and defendant appealed.

The contention of appellee as set forth in its bill is, that the payment demanded by the Secretary of State was under the provisions of sections 10a, 10b and 10c of "An act regarding fees for the incorporation and the increase of capital stock of companies and corporations in this State," in force July 1, 1895, as amended, (Hurd's Stat. p. 1325,) whereas it is claimed that so far as said provisions of said statute might be deemed applicable to the filing and recording of the agreement of consolidation described in the bill, by which appellee came into existence as a corporation, they have been repealed by "An act to provide for the regulation of public utilities," in force January 1, 1914.

The capital stock of appellee was $300,000,000. The articles reserved from the present issue something over $50,-000,000. The present issue of $249,590,460 was for the purpose of retiring the stock of the constituent companies. That was the amount the utilities commission was asked to consent to the issuance of, and payment made for such consent was based upon the issuance of that amount of stock.

The question presented is whether the provisions of sections 10a, 10b and 10c of chapter 53, referred to for convenience as the Incorporation Fee act, were superseded or repealed, by implication, by section 31 of the Public Utilities act. The appellee contends that the payment required by section 31 of the Public Utilities act is payable into the State treasury as taxes levied for State purposes, and that as applied in a procedure consolidating public utility corporations it is a tax exacted in the process of granting a franchise to do business as a body corporate and in its nature and application is identical with the tax collectible under the Incorporation Fee act; that the collection of both is double taxation, which is contrary to the public policy of the State. Appellant insists the two exactions of the two

taxes or payments are for entirely distinct and different ob-· jects; that the tax under the Incorporation Fee act is upon the individual incorporators and is paid by them before the corporation comes into existence, while the tax required by section 31 of the Public Utilities act is a tax upon the corporation after its creation.

Section 10*a* of the Incorporation Fee act requires the payment to the Secretary of State of $50, and in addition thereto one dollar for each $1000 of capital stock over $5000. The payment made to the Secretary of State by appellee is admitted to be the correct amount if appellant was entitled to collect it before filing the papers for incorporation. Section 31 of the Public Utilities act is as follows: "The commission shall charge every public utility receiving permission under this act for the issue of stocks, stock certificates, bonds, notes and other evidences of indebtedness an amount equal to ten (10) cents for every $100 of· such securities authorized by the commission, and the same shall be paid into the State treasury before any such securities shall be issued." Before the petitioning corporations presented incorporation papers to the Secretary of State for filing, they secured permission of the State Utilities Commission to issue 2,495,904.60 'shares, which was the amount required to retire the stock of the constituent companies, the remaining 504,095.40 shares to be issued when authorized by the board of directors, "with the approval of such governmental bodies as shall have authority in the premises." Upon such consent being obtained said petitioning companies paid into the State treasury the tax required by said section 31, $249,590.46.

In our view the decision of the case depends upon what the intention of the legislature was in the passage of the Public Utilities act, especially section 31. Prior to the passage of the Public Utilities act the State reserved no visitorial and regulatory powers over corporations created by it. The act gives the commission supervision of the issuance of

stocks, stock certificates, notes, bonds and other evidences of indebtedness of public utility corporations. Subject to the provisions of the act and the order of the commission, a public utility, whether a corporation, company, association, joint stock company or association, firm, partnership or individual, may issue stock, stock certificates, etc., for the purposes mentioned in the act. The commission is given authority to grant permission for the issue of stocks, etc., in the amount applied for, or a lesser amount, or not at all, and may attach to the exercise of the permission such conditions as it may deem reasonable and necessary. Unless the consent of the commission is obtained no public utility may merge or consolidate with another public utility. The capitalization formed by the consolidation of two or more public utilities is subject to the approval of the commission, and all stock issued without an order of the commission is void. No public utility can transact any business in this State until it has obtained from the commission a certificate of convenience and necessity.

Appellee contends that the Public Utilities act gives the commission created by it supervision and control of the incorporation of public utility corporations and takes from the citizen the privileges enjoyed under the general Incorporation laws to demand grants of corporate franchises. We do not understand the Public Utilities act to give the commission any power to grant corporate franchises. It confers only powers of regulation and control over corporations organized under acts granting the power to create corporations. The organization of a public utility corporation is not given to the commission, but control and regulation of the issue of its stock are vested in said commission. The commission's consent must be obtained before the corporation can issue any stock, and it may grant permission to the corporation for the issue of the amount applied for, or a lesser amount, or not at all. The powers given the commission are of regulation and control over the corpora-

tion after its organization, except in the case of consolidation of public utility corporations under section 27, which requires the consent of the commission to the consolidation. There is this distinction between the tax required under the Incorporation Fee act and that required under section 31 of the Public Utilities act: The payment under the former is exacted of the incorporators before the corporation comes into existence and is a condition precedent to the grant of a corporate franchise, while the tax exacted under section 31 is exacted of and paid by the corporation after it has come into existence. *Scheidel Coil Co.* v. *Rose,* 242 Ill. 484.

But it is contended that the tax paid by the incorporators is paid for the purpose of obtaining and exercising a corporate franchise; that the issuing of stock is an indispensable attribute of the exercise of the corporate franchise; that the tax is exacted for the grant of that right and is proportioned to the capital stock authorized; that the tax required to be paid by section 31 is for the same right to issue stock and is the same in amount and character as the tax required by the Incorporation Fee act, and if both are required to be paid it is double taxation, which it will not be presumed was intended by the legislature unless it clearly and unmistakably appears that such was the intention. It is insisted that no such intention appears, and that while the Public Utilities act does not expressly repeal the Incorporation Fee act, it operated to repeal it by implication. The law does not favor repeals by implication, and to justify holding a subsequent provision repealed a former one by implication there must be repugnancy between the two acts. It is the duty of courts to so construe acts, if possible, that both shall be operative. (Sutherland on Stat. Const. sec. 247.) But repeals by implication are not necessarily within any prohibition of the constitution, and where there is an irreconcilable conflict between two acts, to the extent of the conflict the later amends or repeals the former by implication. (*Holmgren* v. *City of Moline,*

269 Ill. 248.)   Courts will presume that absurd conse-
quences leading to great injustice were not intended, and a
construction will be adopted which it may be reasonably as-
sumed was contemplated.   The primary object in constru-
ing statutes is to give effect to the true intent and meaning
of the legislature.   (*Hoyne* v. *Danisch,* 264 Ill. 467; *Peo-
ple* v. *Fox,* 269 id. 300.)   Where the effect of a later act
is not to entirely abrogate a former one but merely to with-
draw from the operation of the former act a portion of the
cases included within its terms, leaving it in force as to
cases not provided for by the later law, the result will be
that the earlier act will be in part superseded by the effect
of the provision of the later act.   (*People* v. *Sweitzer,* 266
Ill. 459.)   *People* v. *Rose,* 210 Ill. 582, involved the ques-
tion whether sections 10a, 10b and 10c of the Incorporation
Fee act applied to railroad corporations.   There was noth-
ing in the act expressly making railroad companies liable
for the fees provided for by that act.   The procedure for
the incorporation of a railroad company is provided for in
the chapter on railroads, (Hurd's Stat. 1916, p. 2067,) and
it was contended the Incorporation Fee act did not apply
to corporations organized under that chapter, but the court
held it did apply, and a proposed railroad corporation was
subject to the tax provided for by the Incorporation Fee
act.   These rules and principles are to be considered in
connection with the rule that double taxation will never be
presumed, and before that effect will be given a statute it
must unmistakably appear that the legislature so intended
it.   (*Tennessee* v. *Whitworth,* 117 U. S. 129; Cooley on
Taxation, 165.)   The tax imposed by the Incorporation
Fee act and that imposed by section 31 of the Public Utili-
ties act are required to be paid into the State treasury for
State purposes.   Both are measured by the amount of stock
authorized to be issued, are exacted for the privilege of
exercising a corporate franchise and are identical in nature
and amount.

277 — 31

The right to issue stock is necessary to the exercise of the corporate franchise. "It is impossible to conceive of a corporation existing without stock or stock certificates representing the interests of the corporators in the organization." (*Keokuk and Western Railroad Co. v. Missouri,* 152 U. S. 301.) Prior to the passage of the Public Utilities act the grant of a corporate franchise by the State to all corporations for pecuniary profit included the right to issue the full amount of capital stock. The Public Utilities act placed the issuance of stock of public utility corporations under the control of the commission, and exacted payment of a fee or tax at the same rate required by the Incorporation Fee act as a condition precedent to the consent of the commission to the issuance of stock. The whole question of stock issue, it would seem, was placed under the control of the utilities commission. By section 21 of the Public Utilities act the commission is given authority to "grant permission for the issue of such stocks  *  *  *  in the amount applied for, or in a lesser amount, or not at all." It is thus clear that the grant by the State of the right to be a public utility corporation no longer carries with it the unqualified right to issue stock, and it would seem reasonable that when the legislature took the right to authorize the issue of stock from the arm or department of State where it had previously been and placed it in another department or administrative board, it impliedly repealed the exaction required under the former law for the exercise of a right which was by the later law committed to another department. The amount of the tax imposed by the two acts was the same, viz., ten cents for each $100 of stock authorized to be issued. True, under the general Incorporation law the Secretary of State had no authority to limit the amount of the stock issue by the corporation to any amount less than its authorized capital, while the utilities commission has a discretion in determining the amount that shall be authorized to be issued. That does not, in our opinion, indicate an in-

tention of the legislature to exact double taxation. If any stock is issued by consent of the utilities commission the public utility corporation is required to pay ten cents for every $100 so issued, and if the full amount of the capital stock is authorized to be issued the State will receive the same amount provided by the Incorporation Fee act. In this case less than the full amount of the capital stock was asked to be, and was authorized to be, issued. The remainder of the stock by the articles of consolidation it was agreed should issue when authorized by the board of directors, "with the approval of such governmental bodies as shall have authority in the premises."

From a consideration of the two acts we are of opinion that to hold that payment is required under the Incorporation Fee act and also under section 31 of the Public Utilities act is double taxation, and we are unable to see any intention of the legislature, plainly and unmistakably, to impose both. On the contrary, it seems more reasonable that when the legislature placed the authority to consent to the issue of stock in the utilities commission, and authorized it to require, as a condition precedent to giving consent, the payment into the State treasury of the same sum per $100 as required by the former act, it intended the payment should be in lieu of the payment under the former act, when the grant of the corporate franchise carried with it or included the right to issue the full amount of the capital stock. In our opinion it must be held that section 31 of the Public Utilities act operated to repeal the Incorporation Fee act as applied to corporations of the character of the appellee.

It is our conclusion that the decree of the circuit court was in accordance with the law, and it is affirmed.

*Decree affirmed.*