(No. 31489.—)

CINCINNATI, INDIANAPOLIS AND WESTERN RAILROAD COM-
PANY, Appellee, *vs.* EDWARD J. BARRETT, Secretary of
State, *et al.*, Appellants.

*Opinion filed September 21, 1950.*

IVAN A. ELLIOTT, Attorney General, of Springfield,
(WILLIAM C. WINES, RAYMOND S. SARNOW, JAMES C.
MURRAY, and A. ZOLA GROVES, all of Chicago, of counsel,)
for appellants.

GRAHAM & GRAHAM, of Springfield, (WILLIAM A.
EGGERS, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellee, Cincinnati, Indianapolis and Western Railroad
Company, hereafter called Railroad, filed suit in the circuit
court of Sangamon County on July 14, 1944, to enjoin the
Secretary of the State of Illinois from turning over to the
State Treasurer the sum of $2363.58 plus ten per cent
penalty, paid under protest by Railroad to obtain a cer-
tificate of authority to transact business in Illinois as a
foreign corporation. A temporary injunction was granted

and the case tried upon a stipulation of facts, and final decree entered October 11, 1949, restraining the defendants from turning said sum of money into the State treasury, and also ordering said sum refunded to Railroad. The Secretary of State and State Treasurer appeal to this court, as the revenue is involved.

In 1902, the Cincinnati, Indianapolis and Western Railway Company, hereafter called Railway, was organized as an Illinois corporation, and operated in this State until 1915, when a foreclosure proceeding was commenced in the United States courts, and, as a result thereof, all of the property, rights, franchises and assets were sold at foreclosure sale and purchased by a reorganization committee, which later transferred said property so purchased to Railroad, which was organized and incorporated as an Indiana corporation on October 30, 1915. At the time of such purchase by Railroad the act of 1905, regulating admission of foreign corporations to do business in Illinois, was in effect. (Hurd's Rev. Stat. 1913, chap. 32, pars. 67b to 67j, incl.) This statute provided that before any such corporation for profit should be permitted or allowed to transact business, or exercise any corporate powers in the State of Illinois, it should be required to make application to the Secretary of State, giving certain information, and to pay a fee based upon the proportion of stock represented by its property and business in Illinois, in the same amount as was required of similar corporations formed under the law of Illinois, and providing certain penalties for failure to comply with the act.

Railroad, as a foreign corporation, had never complied with the act of 1905, or any succeeding or subsequent statutes relating to the transaction of business in this State by a foreign corporation until 1944, when, to comply with the requirements exacted from foreign corporations before they may transact business in the State, it was required by the Secretary of State to pay the amount as above specified.

As soon as this money was paid to the Secretary of State the temporary injunction was issued, restraining him from turning the amount over to the State Treasurer.

It appears that in November, 1915, Railroad made an application to the Public Utilities Commission, under section 31 of the Public Utilities Act, (Hurd's Rev. Stat. 1913, chap. 111a, par. 31,) for authority to sell and issue certain stocks, bonds and securities, which permission was granted upon the payment of the fees required for the authorization by said section 31, being at the rate of ten cents for each one hundred dollars.

It is contended by Railroad that by paying this fee, and as successor to the assets of Railway, appellee was not required to pay the fees required of foreign corporations to transact business in Illinois. On the contrary appellants claim that Railroad did not, either by the payment of fees for the issuance of stock, or as successor or purchaser of the assets of Railway, obtain authority, as a foreign corporation, to transact business in Illinois.

The issues presented by this case are very narrow, and substantially involve only the proposition of whether a purchaser of the assets owned by an Illinois railroad may carry on or conduct the business of a railroad without regard to whether it is organized as a domestic or foreign corporation.

Under the statutes in force in 1915, fees were required of foreign corporations, including railroads, in a sum equal to fees paid by similar corporations formed under the laws of Illinois. (Hurd's Rev. Stat. 1913, chap. 32, par. 67d.) The law at that time also provided that any corporation receiving permission to issue stocks, bonds, notes or other evidence of indebtedness, must pay a sum equal to ten cents on every one hundred dollars of such securities issue. (Hurd's Rev. Stat. 1013, chap. 111a, par. 31.) The so-called Incorporation Fee Act, under the chapter entitled "Fees and Salaries," (Hurd's Rev. Stat.

1913, chap. 53, sec. 10a,) provided for the amount of fees to be paid to the Secretary of State for the organization of a domestic corporation, which was based upon the amount of its capitalization.

It is thus apparent that even a domestic corporation was liable under these statutes to pay two sets of fees: (1) under the Incorporation Fee Act, for the privilege of becoming incorporated, and (2) for the privilege of issuing stocks, bonds, or securities under the Public Utilities Act. Of course, a foreign corporation could not be required to pay Illinois for becoming organized in another State, but the Foreign Corporation Act, above referred to, required payment of fees for the privilege of transacting business in the State of Illinois.

Thus, we find that a foreign corporation was also liable for the payment of fees for two different privileges: (1) for the issuance of stocks and bonds; and, (2) for the transaction of business in the State of Illinois. Under these laws it has been held that under the act of 1905 a foreign railroad corporation must comply therewith before it is entitled to exercise any of its corporate powers in the State of Illinois. (*Indiana Harbor Belt Railroad Co.* v. *Green,* 289 Ill. 81.) In that particular case the railroad attempted to exercise the power of eminent domain, without qualifying as a foreign corporation, and relied upon a previous act of 1899, authorizing the sale of corporate property to a corporation of another State, and prescribing the rights, powers and duties of the purchasing company. Among other things, this act provided that a railroad company purchasing the property and assets of another railroad in this State could exercise the powers, privileges, immunities and franchises of the corporation whose property was so purchased, and could, when necessary or proper, exercise the power of eminent domain in the same manner as corporations of the State were authorized to do. (Laws of 1899, p. 116.) We held in the *Green case* that this act of 1899

presupposes that such foreign purchasing corporation has complied with the foreign corporation laws, and is legally operating in this State, and hence, not having complied with the foreign corporation law the railroad could not exercise the power of eminent domain.

It seems to us that in principle this case is controlling. At the time Railroad was incorporated it desired to issue stock and bonds, obtained a permit, and paid the fees required by section 31 of the Public Utilities Act. As a foreign corporation it was also required to obtain a certificate to do business in the State of Illinois, and, although notified by the Secretary of State upon one or more occasions, did not comply with the latter law until 1944.

It is true that in *Missouri Pacific Railroad Co.* v. *Public Utilities Com.* 292 Ill. 427, it was held that the Public Utilities Act cannot require a railroad company to pay a fee for the issuance of all of its stock, representing property in many States, which was what was attempted to be done in that case, yet, we know of no decision which would prevent a charge being made for the issuance of stock in proportion to the value of the property owned in the State of Illinois.

Appellee contends that this cause is controlled by the case of *New York Central Railroad Co.* v. *Stevenson, 277* Ill. 474. This case is readily distinguishable. In that case the corporation involved was an Illinois corporation and not a foreign corporation. Section 31 of the Public Utilities Act required a fee for the issuance of stocks and bonds, and section 10a of the Incorporation Fee Act also provided for the payment of fees for the same purpose. Had both acts been held effective the railroad company would have been required to pay fees in excess of $250,000 under each statute, and since they were for the same purpose, and constituted double taxation, the latter act, being the Public Utilities Act, was deemed to have by implication repealed in part the Incorporation Fee Act. After commenting that

absurd and unjust consequences will be presumed not intended by an act, with respect to two apparently conflicting acts, the court said: "Where the effect of a later act is not to entirely abrogate a former one but merely to withdraw from the operation of the former act a portion of the cases included within its terms, leaving it in force as to cases not provided for by the later law, the result will be that the earlier act will be in part superseded by the effect of the provision of the later act." The court then held the Public Utilities Act operated to repeal the Incorporation Fee Act, "as applied to corporations of the character of appellee," thus repealing the part affecting domestic corporations. That result, however, would not follow in a case of a foreign corporation which is not charged for the privilege of issuing stock as a foreign corporation, but is charged for the privilege of transacting business in the State of Illinois.

The situation thus created is analogous to cases in which a corporation, exempt from taxation, transfers its property to another corporation. In such cases, it has been held that in the absence of express direction to that effect in the statute, a special statutory exemption or privilege does not accompany the property in its transfer to a purchaser. (*Morgan* v. *Louisiana,* 93 U. S. 217; *Wilson* v. *Gaines,* 103 U.S. 417; *Chesapeake & Ohio Railway Co.* v. *City of Chicago,* 114 U.S. 176; *Union Traction Co.* v. *City of Chicago,* 199 Ill. 484, at p. 553.) So here, Railroad is an entirely different entity from Railway. The former is a foreign corporation; the latter was an Illinois corporation. As a foreign corporation Railroad is required to pay a fee to transact business in this State. Railway, as an Illinois corporation, was exempt from the payment of such a fee, and, therefore, the mere fact that Railroad acquired the property of Railway gives it no right to the privilege to transact business as a foreign corporation, except in accord-

ance with the statutes of the State; and, as was said in *Indiana Harbor Belt Railroad Co.* v. *Green,* 289 Ill. 81, it is to be presumed that, when a foreign corporation is given rights in this State, it has complied with the requirements necessary for a foreign corporation to exercise such rights.

Appellee cites certain cases holding that the Public Utilities Act of 1914 was complete in the regulation of public utilities, to the exclusion of other departments of the State. We believe this is a correct statement of the law, but the question involved here is not that of *regulation,* but of *permission* to operate at all. Since the legislature has the power to impose such conditions upon foreign corporations for the exercise of powers or privileges in this State as it may choose, such conditions must be complied with. *Illinois State Trust Co.* v. *St. Louis, Iron Mountain and Southern Railway Co.* 208 Ill. 419; *Indiana Harbor Belt Railroad Co.* v. *Green,* 289 Ill. 81.

It is urged that Railroad paid a fee for the right to issue stocks and bonds and other securities, as provided by section 31 of the Public Utilities Act then in force. If appellee had been a domestic corporation there would be force to this contention, but, since it is a foreign corporation, it is immaterial to a correct decision of this case whether or not the State of Illinois could have exacted this fee. On this point we express no opinion. It is, however, clear that the Secretary of State of Illinois had a right to demand of appellee, and to receive, the fees required to be paid by a foreign corporation to obtain a certificate to transact business in the State of Illinois.

It necessarily follows that the decree of the circuit court of Sangamon County was erroneous. It is the order of the court that said decree be reversed and the cause remanded, with directions to dismiss the bill of complaint.

*Reversed and remanded, with directions.*