(No. 45132.—

THE CITY OF EVANSTON *et al.,* Appellants, v. THE COUNTY OF COOK, Appellee.

*Opinion filed Nov. 30, 1972.—Rehearing denied Jan. 26, 1973.*

SCHAEFER, J., UNDERWOOD, C.J., and DAVIS, J., dissenting.

JACK M. SIEGEL, ARTHUR C. THORPE, RICHARD J. TROY, all of Chicago, ROBERT J. DI LEONARDI, of Des Plaines, and WALTER C. WELLMAN, of Lyons, for appellants.

EDWARD V. HANRAHAN, State's Attorney, of Chicago (VINCENT BENTIVENGA, JR., Chief of the Civil Division, and DONALD P. SMITH and PAUL P. BIEBEL, JR., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County which granted defendant's motion for summary judgment in a declaratory judgment action. This court allowed a motion to transfer the appeal from the appellate court to this court pursuant to Rule 302(b). 50 Ill.2d. R. 302(b).

Plaintiffs are municipalities located in Cook County and each is a home-rule unit under section 6(a) of article VII of the constitution of 1970. Defendant, County of Cook, is also a home-rule unit under this section of the constitution. The defendant county adopted an ordinance effective January 1, 1972, imposing a tax, to be paid by the purchasers, upon the retail sales of new motor vehicles in Cook County. The tax is imposed at a fixed amount per vehicle pursuant to a schedule for various classes of vehicles. Thereafter, each of the plaintiffs adopted an ordinance imposing a similar tax in the same amounts. Section 6(c) of article VII of the constitution of 1970 provides: "If a home rule county ordinance conflicts with an ordinance of a municipality, the municipal ordinance shall prevail within its jurisdiction." It is the contention of the plaintiffs that the ordinance of the County of Cook conflicts with the ordinances of the municipalities and therefore the municipal ordinances prevail to the exclusion of the county ordinance within the corporate limits of the plaintiffs. The trial court held that the County of Cook ordinance is not in conflict with the substantially identical ordinances of the plaintiff municipalities within the meaning of section 6(c), granted the County of Cook's motion for summary judgment and denied the plaintiffs' motion for summary judgment. The plaintiffs have appealed from this order.

The grant of home-rule power is found in the following language of section 6(a) of article VII: " *** Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

The limitations on the home-rule power to tax are found in section 6(e): "A home rule unit shall have only the power that the General Assembly may provide by

law *** (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations", and in section 6(g): "The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax ***."

It is undisputed that both the plaintiffs and the defendant have the authority under the constitution to impose the tax in question and that this authority has not been denied or limited by the General Assembly under the provisions of section 6(g). The sole question before this court is whether a home-rule county tax may be imposed upon the sales of motor vehicles within the corporate limits of a municipality when that municipality has adopted an ordinance imposing a substantially identical tax.

Plaintiffs argue that the imposition of the same tax by both the municipalities and the county constitutes double taxation. They contend that this court has consistently adhered to a policy opposing double taxation, citing language of this court to the effect that double taxation will never be presumed. (*People ex rel. Lindheimer v. Schweitzer,* 369 Ill. 355; *New York Central R.R. Co. v. Stevenson,* 277 Ill. 474.) Therefore, to avoid the evils of double taxation, plaintiffs contend that this court should hold that the municipal taxing ordinances prevail to the exclusion of the county ordinance. Plaintiffs do not urge that the county tax is constitutionally invalid because of double taxation, but only that a preference for the municipalities' tax should be established for this reason.

This court has on many occasions approved levies on property by different taxing districts for similar purposes. *People ex rel. Hanrahan v. Caliendo,* 50 Ill.2d 72, 84; *Kucharski v. White,* 42 Ill.2d 335, 337; *People ex rel. Witte v. Franklin,* 352 Ill. 528, 531; *Board of Highway Comrs. v. City of Bloomington,* 253 Ill. 164, 168; *People ex rel. Darnell v. Woodward,* 285 Ill. 165, 169, 170.

Plaintiffs however attempt to distinguish these hold-

ings by pointing out that they involved dual taxation of property and contend that the power to tax conferred by section 6(a) applies only to nonproperty taxation. We do not agree with this distinction. Section 6(a) is a broad grant of the power "to tax." This power is limited by the provisions of section 6(e) on the power to license for revenue or impose taxes upon or measured by income or earnings or upon occupations and by the authority of the General Assembly under section 6(g) to limit the power to tax by a three-fifths vote. Section 6(m) provides that the powers of the home-rule unit shall be liberally construed. For these reasons the broad grant of the power "to tax" in section 6(a) cannot be said to grant only the power to impose nonproperty taxes.

This conclusion finds support in the Report of the Committee on Local Government, Illinois Constitutional Convention 1970. (7 Record of Proceedings, Sixth Illinois Constitutional Convention (December 8, 1969—September 3, 1970) 1591, 1656-1657 [hereinafter cited as Proceedings].) The committee report in giving examples of the powers conferred on home-rule units states that the power to levy a property tax falls within the home-rule powers granted and can only be limited by a statute passed by a three-fifths vote of each house of the General Assembly. The power of a home-rule unit to tax is not found in statutory authorization but in the grant of that power found in section 6(a) of article VII and extends to property as well as nonproperty taxation, except as limited by the provisions of article VII. (See *S. Bloom, Inc. v. Korshak, 52 Ill.2d 56, 60.*) Plaintiffs' attempted distinction between property and nonproperty taxes is therefore not valid.

The previous decisions of this court sustaining dual taxation of property by different taxing districts for similar purposes demonstrate that the dual taxation involved in this case is not double taxation to which this court has expressed opposition in *Schweitzer* and *Steven-*

*son.* It is not, therefore, necessary to construe the county tax as being inoperative within the municipalities for the purpose of avoiding the evils of double taxation.

Plaintiffs rely upon the statements of delegates in the debates of the constitutional convention as indicating the intent of section 6(c) to prohibit a county from exercising its home-rule powers within a municipality when that municipality has adopted an ordinance covering the same field. We do not find these statements in the debates helpful because they concerned zoning and certain regulatory and licensing ordinances of home-rule units. In such ordinances there are clear opportunities for contradictions and conflicts between the ordinances of the municipalities and ordinances of the county. The discussions did not deal with ordinances involving taxation.

We agree with plaintiffs' contention that it was the intention of the constitutional convention to establish the preference for municipal authority over home-rule county authority in certain situations. We do not agree, however, that this preference establishes a principle of preemption so as to render a home-rule county taxing ordinance inoperative within a municipality whenever that municipality decides to legislate on the same subject. The Report of the Committee on Local Government of the 1970 constitutional convention recognized the problem of legislating in the same field by both a municipality and a home-rule county not as a question or preemption of authority but as a matter of resolving conflicts in ordinances. (7 Proceedings 1591, 1646-1650.) In defining the problem to be resolved by section 6(c) the committee proposal states: "*** there may be differences or actual conflicts and inconsistencies between municipal legislation and county legislation. Some provision must be made to resolve these potential disagreements and conflicts" (p. 1647). Thus, because of the more dominant role of municipalities as local government units, the problem was resolved in favor of municipal ordinances. This preference

for municipalities does not establish a doctrine of pre-emption rendering inoperative a home-rule county's taxing ordinance within the municipal boundaries when the municipality has legislated in the same field. This preference only establishes a means of resolving conflicts and inconsistencies existing between a municipal ordinance and a home-rule county ordinance when both ordinances are in effect in the same territory.

If we view the provisions of section 6(c) as establishing the principle of preemption in favor of municipalities instead of only a means of resolving conflicts and inconsistencies, a municipality could prohibit the collection of a home-rule county tax within its boundaries by adopting an ordinance imposing only a nominal tax on the same taxable subject or transaction. Since section 6(c) establishes a preference, not only for home-rule municipalities but for all municipalities, the theory of preemption could prevent the home-rule county from exercising its taxing powers in every municipality in the county. The local government committee proposal referred to herein acknowledged that one of the purposes of the local government article (Ill. Const. (1970), art. VII) is to strengthen county government (p. 1649). It is recognized that indispensable to home rule is the authority to provide for the necessary revenue. (Cohn, Municipal Revenue Powers in the Context of Constitutional Home Rule, 51 Nw. U.L. Rev. 27 (1956).) As stated by Chairman Parkhurst of the Local Government Committee, "*** home rule without money is meaningless." (Parkhurst, Article VII—Local Government, 52 Chicago Bar Record 94, 100.) In view of the clear intent expressed in article VII we cannot accept a construction of section 6(c) which would weaken the home-rule county by making it possible to deprive it of the authority to exercise its power to tax within its municipalities.

In the case before this court there is no conflict or inconsistency within the meaning of section 6(c) which

requires us to hold that the plaintiffs' tax ordinances must prevail to the exclusion of the defendant's tax ordinance within the corporate limits of these municipalities. This is simply a situation in which two separate and distinct units of local government are exercising the power which they possess by virtue of section 6(a) of article VII of the 1970 constitution to tax the same transaction. (All units of local government in this case are home-rule units.)

Plaintiffs argue that the import of the trial court's decision is that the county, by imposing taxes on a host of taxable transactions, will dry up the source of municipal revenue. The municipalities would, plaintiffs contend, as a practical matter, be prevented from imposing a tax on the same transactions because the additional tax would be unduly burdensome to local merchants and enterprises. We recognize that the possibility of abuse exists in the exercise of any power. The Report of the Committee on Local Government recognized the possibility of abuse of the home-rule powers and relied upon the authority of the General Assembly, preserved by section 6, to protect against these possible abuses. (7 Proceedings 1591, 1614, 1628.) Under section 6(g) the General Assembly by a vote of three fifths of the members elected to each house may deny or limit the power of a home-rule unit to exercise its power to tax. Under this provision the General Assembly may prevent or rectify the hardships which plaintiffs envisage, should they occur.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE SCHAEFER, with whom MR. JUSTICE DAVIS joins, dissenting:

Mr. Justice Davis and I do not agree with the basic approach that is expressed in the majority opinion with respect to the relationship between a home-rule county and the municipalities located in such a county. The

problems inherent in the relationship are particularly acute where, as in this case, home-rule municipalities are involved. These problems were foreseen and a solution was provided in section 6(c) of article VII:

"(c) If a home rule county ordinance conflicts with an ordinance of a municipality, the municipal ordinance shall prevail within its jurisdiction."

The majority acknowledges "the intention of the constitutional convention to establish the preference for municipal authority over home-rule county authority" but then asserts its own limitation of that preference to "certain situations." Just what these situations may be is not stated, but one of them is apparently the case of a taxing ordinance. The difficulty with such a limitation is that the constitution has granted the power "to tax" to home-rule units in exactly the same terms in which it granted all other home-rule powers: "to regulate ***; to license; to tax; and to incur debt." (Art. VII, sec. 6(a).) Nothing in the constitution or in the proceedings of the constitutional convention suggests that county taxing ordinances are exempt from section 6(c), or that the authority of the General Assembly was relied upon to protect against possible abuses by county taxing ordinances.

Nor do we agree that the constitutional "preference only establishes a means of resolving conflicts and inconsistencies existing between a municipal ordinance and a home-rule county ordinance ***." That is not the way the preference is stated in the constitution or the way it was understood by the constitutional convention. Upon this question the Report of the Committee on Local Government to the Constitutional Convention stated: (Paragraph 3.3 is the provision which ultimately emerged as section 6(c).)

"*Paragraph 3.3—County Home-Rule Powers Within Municipal Boundaries.*

*1. Discussion*

*The problem.* County home-rule powers granted by paragraph 3.1(a) embrace the entire county, including

areas within municipal boundaries. In many cases, the extension of county authority into municipal territories will be beneficial and fully acceptable to city officials. An example is the operation of a county hospital and county health services for all residents of the county, including city dwellers. In other cases, however, city officials may object to the assertion of county authority within municipal boundaries and there may be differences or actual conflicts and inconsistencies between municipal legislation and county legislation. Some provision must be made to resolve these potential disagreements and conflicts.

\* \* \*

*The Solution: municipal authority prevails over county home-rule.* In paragraph 3.3 the committee proposes that municipal ordinances should prevail, within municipal boundaries, over conflicting assertions of county home-rule powers. The preference thereby given to municipal legislation is based upon practical and historical grounds. At this point in the development of local government in Illinois, municipalities are by far the most important form of general-function local government units. Counties are relatively weak, less organized and limited in authority. Although one purpose of this Article is to strengthen county government so that it will become a useful adjunct, and in some cases even a useful alternative to municipal government, we do not believe that the Constitution should permit home rule counties to unilaterally assume the functions and powers of municipalities which lie within the county's borders. Such substantial transfers of authority from one set of local governments to another should be made only in the most careful manner under the auspices of the chief political institution of the state—the General Assembly." 7 Proceedings 1646-48.

The same explanation of section 3.3 was given by the chairman of the Local Government Committee in response to questions from delegates:

"Mr. Thompson: \*\*\* Is there any difference in the relationship between a municipality with home rule and a county with and a county without home rule?

Mr. Parkhurst: None whatsoever where the municipality within a county passes an ordinance. None whatsoever.

Mr. Thompson: If you can guarantee that, I am satisfied.

Mr. Parkhurst: Guarantees are hard to make, but that certainly is the intent, and the record is clear, and that's what 3.3 intends to say.

\* \* \*

Mr. Tecson: \*\*\* Can you be more specific and explain how this relates, for example, to the unincorporated area of Cook County, as it stands now with some 300 square miles, in the light of some of the questions that have been asked by the other questioners?

Mr. Parkhurst: All right. Let's get off zoning for a minute and pick another example which I think might clarify. Under the home rule grant, suppose Cook County—as I believe it automatically would have—exercises a home rule power; suppose it licenses Fuller Brush men throughout the county. Now the present statute, we'll assume, does not permit Cook County to license Fuller Brush men; but under home rule where they have the power to license, they can license Fuller Brush men, regulate their activities, and say they can't make more than eighteen stops a day, and they have to be college graduates, and so on and so forth.

Now, what 3.3 says is that when Cook County exercises that power to license Fuller Brush men, if the statute says that municipalities can also license Fuller Brush men, and the municipality does, the licensing provision of the municipality controls within the boundaries of the municipality. No extraterritorial problems here. The licensing provision of the municipality pre-empts or supercedes [sic] the countywide licensing provision—or ordinance—passed pursuant to home rule powers. Does that help? That's what this is intended to do, and I think does, clearly.

So it has no effect in the unincorporated areas. The county can still exercise all the home rule it can think of in the unincorporated areas of Cook County or any other county. What this says is that the county can exercise home rule powers countywide; but if a municipal ordinance, as provided by law, within that county *does the same thing,* the municipal ordinance prevails." (Emphasis supplied.) 4 Proceedings 3123.

From the explanations that were put before the convention by the Local Government Committee and its chairman, we think it apparent that the word "conflicts" in section 6(c) was not intended to be limited to contradictions or inconsistencies between county and municipal ordinances. As the report of the committee pointed out, it also includes those cases in which "the extension of county authority into municipal territories" will not be "fully acceptable to city officials,"—those cases in which "city officials may object to the assertion of county authority within municipal boundaries." And as the chairman of the committee emphatically stated, "where the municipality within a county passes an ordinance," the authority of a home rule county is no different from that of any other county. The municipal ordinance prevails if it occupies the same ground—"does the same thing"—as the county ordinance.

A realistic consideration of the dual regulatory system that the contrary view would impose upon those who live in cities and villages located within home-rule counties make this conclusion, in our opinion, imperative. The majority view would require everyone who intends to construct a new building or alter an existing one within the boundaries of a municipality located in Cook County to obtain a permit from Cook County as well as from his own municipality, and to pay a fee to each governmental unit. The fact that the regulations of the county and the municipality are the same, so that there are no "contradictions" or "inconsistencies" between the two ordinances, does not justify the imposition of a meaningless burden. Examples could be multiplied. It is no answer to say that the home-rule county may not choose to regulate or to license. The question is one of power, not discretion.

So far as the power to tax is concerned, the adverse economic effect of sales taxes upon businesses located within the governmental unit which levies them has long

been recognized. That is why we have use taxes. And that is why, when the General Assembly in 1959 authorized counties to levy a retailers' occupation tax, the power to tax was limited to the unincorporated areas in the county. (Ill. Rev. Stat. 1959, ch. 34, par. 409.1.) That limitation is today expressed in the following language:

> "Provided, all persons engaged in the business of selling tangible personal property at retail in a municipality shall not be subject to the tax levied by the county board of such county as authorized by this Section with respect to sales made by such persons in the course of so engaging in business in such municipality." Ill. Rev. Stat. 1971, ch. 34, par. 409.1.

The principal difference between the county tax involved in the present case and the county retailers' occupation tax is that the present tax is levied at a flat rate for each class of vehicle sold, instead of at a percentage of the sale price. Its economic effect is no different than that of the familiar combined occupation and use tax that was evolved to circumvent the dictum that had long been thought to limit the permissible methods of taxation under the constitution of 1870. See *Turner v. Wright (1957), 11 Ill.2d 161, 164.*

In our opinion one of the purposes of section 6(c) was to prevent a home-rule county from putting municipalities to the choice of forgoing necessary revenue on the one hand, or imposing an economic disadvantage upon businesses located within their borders on the other. The recognition of authority in a home-rule county to levy a tax of this kind upon transactions which take place in the unincorporated areas of the county will fully meet the needs of the county without adversely affecting the power of home-rule municipalities to raise necessary funds.

MR. CHIEF JUSTICE UNDERWOOD joins in this dissent.