THE COUNTY OF COOK, Plaintiff-Appellee, v. THE VILLAGE OF ROSEMONT, Defendant-Appellant.

First District (4th Division) No. 1—98—2847

Opinion filed March 4, 1999.—Rehearing denied March 31, 1999.

Peter M. Rosenthal and Simone M. Boutet, both of Rosenthal, Murphey, Coblentz & Janega, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Patricia M. Shymanski, Thomas M. Burnham, and Paul A. Castiglione, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

This is a constitutional shootout. The weapons are ordinances purportedly authorized by the home rule provisions of the Illinois Constitution of 1970.

Cook County's ordinance creates an amusement tax that is to be collected and remitted by owners and operators of amusement places. The Village of Rosemont, which owns and operates amusement places, enacted an ordinance that provides the Village's patrons won't pay the tax and Village employees won't collect it.

When the smoke clears, only the County is standing. But it's not over yet.

FACTS

In November 1996, pursuant to its home rule powers, Cook County (the County) enacted the Cook County amusement tax ordinance. This ordinance, which took effect February 1, 1997, taxed the "privilege of witnessing or participating in amusements within Cook County." Patrons of "amusements," as defined by the ordinance, were to be taxed in an amount equal to 3% of the admission fee or charge. The ordinance made it the duty of "every owner, manager, or operator of an amusement or of a place where an amusement is being held" to act as a trustee for the County, to collect the tax, and to remit the tax to the County.

The Village of Rosemont (the Village or Rosemont) is the owner of the Rosemont Horizon, the Rosemont Theatre, the Rosemont Convention Center, and Willow Creek Club (collectively referred to as the Village facilities). The County amusement tax ordinance imposes a duty on the Village to collect and remit monies from patrons of amusements presented at any of its facilities.

On January 8, 1997, the Village of Rosemont, pursuant to its home rule power, enacted village ordinance 97—1—8 (Village of Rosemont, Ill.; Ordinance No. 97—1—8). The Village ordinance exempted "persons attending or participating in an amusement at a Village facility" from paying the county tax and prohibited the County from collecting the tax from any person as a result of attending or participating in an amusement at a Village facility. In addition, the Village said it would not act as the County's tax collector. The ordinance prohibited Village officers and employees from collecting the tax.

On March 12, 1997, Cook County filed a complaint against the Village of Rosemont for *mandamus*, injunction, and other relief. The complaint was amended on April 28, 1997, to add allegations that village ordinance 97—1—8 is unconstitutional. Along with the amended complaint, the County filed a petition for preliminary injunction, seeking to have the Village collect the tax while the case was pending.

The circuit court denied the County's petition for preliminary injunction. The court, however, went on to rule the Village's ordinance unconstitutional. The Village appealed and this court reversed the

circuit court's order, finding the circuit court had exceeded the scope of the matters before it. See *County of Cook v. Village of Rosemont*, 293 Ill. App. 3d 713, 688 N.E.2d 1192 (1997).

On remand, the County amended its complaint a third time. In count I of the third amended complaint, the County requested a permanent injunction to enjoin Rosemont and others from refusing to perform the duties imposed by the County's amusement tax ordinance. In count II, the County requested penalties and fees be assessed against Rosemont.

In count III, the County alleged Rosemont exceeded the authority granted a home rule unit by article VII, section 6(a), of the Illinois Constitution of 1970 when it enacted ordinance 97—1—8. The County said "Ordinance 97—1—8 pertains not to Rosemont's government and affairs but to the County's government and affairs." The County claimed the Village had neither home rule authority nor statutory authority "to exempt itself or its patrons from the taxing authority of the County" and could not "abrogate the County's power to assess and collect its Amusement Tax."

In count IV, the County alleged ordinance 97—1—8 was unconstitutional because it had extraterritorial application. The County said:

"The stated purpose of the Rosemont Ordinance is to nullify the County's power to assess and collect tax. As applied to sales made by agents at remote outlets, the effect of Rosemont's Ordinance is to usurp the County's home rule powers outside of Rosemont's municipal boundaries."

The amended complaint added count V, in which the County alleged Rosemont exceeded its home rule powers by enacting another ordinance, Village Ordinance 97—7—2. The County sought to enjoin Rosemont's enforcement of this new ordinance.

Ordinance 97—7—2, which was enacted by the Village on July 2, 1997, was similar to ordinance 97—1—8. The Village eliminated the language contained in ordinance 97—1—8 that declared patrons exempt from paying the County amusement tax, but again asserted: (a) the Village of Rosemont shall not collect the County amusement tax; (b) no officer or employee of the Village shall collect the County's amusement tax; and (c) no officer or employee of the Village shall contract with anyone to collect the County's tax on Rosemont's behalf. In making these assertions, the Village relied on the authority of various provisions of the Illinois Municipal Code (65 ILCS 5/1—1—1 *et seq.* (West 1994)).

The County later moved for partial summary judgment on counts III and IV of its third amended complaint.

On June 9, 1998, the circuit court granted the County's motion for

partial summary judgment on both counts. The court agreed Rosemont's ordinance 97—1—8 was directed at the County's government and affairs, not the Village's. For this reason, the court said, the Village's ordinance was not a constitutional exercise of its home rule authority.

The court also found Rosemont's ordinance had extraterritorial effect because it prevented the imposition of the amusement tax on ticket purchases from third parties outside the Village.

The circuit court declared Rosemont ordinance 97—1—8 unconstitutional and void, and permanently enjoined the Village from enforcing it.

On August 6, 1998, the circuit court, at the Village's request, entered an order finding "no just reason for delaying the enforcement or appeal" of the June 9, 1998, order. 134 Ill. 2d R. 304(a). The Village then brought this appeal.

DECISION

■ ■ We review the circuit court's grant of summary judgment *de novo*, keeping in mind that the party challenging the constitutionality of legislation bears the burden of proof and must overcome the presumption of constitutionality. *Murneigh v. Gainer*, 177 Ill. 2d 287, 685 N.E.2d 1357 (1997).

■ The validity of Village ordinance 97—7—2 is not before us. The issue that is before us is whether, by enacting ordinance 97—1—8, the Village exceeded its grant of home rule power under article VII, section 6(a), of the 1970 Illinois Constitution, which states:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function *pertaining to its government and affairs*, including but not limited to the power *** to tax ***." (Emphasis added.) Ill. Const. 1970, art. VII, § 6(a).

The primary question, then, is whether ordinance 97—1—8 pertains to the Village's "government and affairs" as that phrase is used in section 6(a).

The Village contends the revenue it receives from its amusement facilities—in the form of ticket sale proceeds, parking fees, concession sales, and its own amusement tax—would be substantially reduced by the Cook County amusement tax. In turn, contends the Village, the amount of funds available for municipal services would be reduced.

Counts III and IV, the subjects of the trial court's decision, are directed only at section 2 of the ordinance:

"Persons attending or participating in an amusement at a Village facility shall not be subject to the Cook County Amusement Tax and Cook County shall not be entitled to collect the Cook County

Amusement Tax from any person as a result of that person attending or participating in an amusement at a Village facility." Village of Rosemont, Ill., Ordinance No. 97—1—8, § 2.

The other operative sections of the Ordinance control the conduct of Village officers and employees. That is:

"SECTION 3: No officer or employee of the Village of Rosemont shall require any person attending or participating in an amusement at a Village facility to pay the Cook County Amusement Tax as a condition for attending or participating in the amusement." Village of Rosemont, Ill., Ordinance No. 97—1—8, § 3.

And:

"SECTION 4: *** the Village of Rosemont shall not collect the Cook County Amusement Tax from persons attending or participating in amusements at a Village facility and the Village of Rosemont shall not be considered to be a tax collector for the County of Cook as provided by the Cook County Amusement Tax Ordinance." Village of Rosemont, Ill., Ordinance No. 97—1—8, § 4.

And:

"SECTION 5: No officer or employee of the Village of Rosemont shall collect the Cook County Amusement Tax from any person who attends or participates in an amusement that occurs at a Village facility." Village of Rosemont, Ill., Ordinance No. 97—1—8, § 5.

In the preamble to the ordinance, the Village makes no secret of its purpose:

"WHEREAS, this ordinance is intended to create a conflict with the Cook County Amusement Tax Ordinance ***." Village of Rosemont, Ill., Ordinance No. 97—1—8.

By establishing a conflict, the Village hopes to win the day by relying on article VII, section 6(c), of the Illinois Constitution:

"If a home rule county ordinance conflicts with an ordinance of a municipality, the municipality ordinance shall prevail within its jurisdiction." Ill. Const. 1970, art. VII, § 6(c).

But before the Village can play its section 6(c) trump card, it has to overcome the section 6(a) "government and affairs" hurdle.

The Village does not challenge the pre-ordinance 97—1—8 legal right of the County to enact an amusement tax that applies to all amusement facilities in the Village, including Village-owned facilities. Nor could it. See *Kerasotes Rialto Theater Corp. v. City of Peoria*, 77 Ill. 2d 491, 397 N.E.2d 790 (1979). Nor does the County challenge the legal right of the Village to own and operate amusement facilities, including the right to levy its own amusement tax.

The issue is joined by the enactment of ordinance 97—1—8. We direct our attention to section 2 of the ordinance, the section that

exempts patrons at Village facilities from paying the tax and tells Cook County it cannot collect the tax from attendees or participants at Village facilities.

We conclude the weight of authority, indirect as it might be, supports the trial court's decision that the Village had no home rule power to enact section 2 of its ordinance.

We have said: "[T]he words 'pertaining to its government and affairs' contained in section 6(a) have become words of art in defining the limits of home rule power." *Peoples Gas Light & Coke Co. v. City of Chicago*, 125 Ill. App. 3d 95, 99-100, 465 N.E.2d 603 (1984).

Whether the subject matter of an ordinance relates to the government and affairs of the body that enacted it is not a decision made in a vacuum. We have to consider how the ordinance relates to or has impact on other units of government, here, the County. See *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 470 N.E.2d 266 (1984) (powers of home rule units relate to their own problems, not those of the state or the nation).

Because there is no Illinois decision directly in point, we have examined the debates over the passage of paragraph 3.3 (later article VII) at the Sixth Illinois Constitutional Convention. Mr. Tomei posed a scenario where a home rule county might approve a bond issue and authorize a tax to support the bond issue. He asked whether a city within that home rule jurisdiction could pass an ordinance negating either the approval of the bond issue or approval of the tax within the city. Vice-Chairman Carey answered:

"[I]n connection with the example you gave with respect to a bond issue, a city ordinance which would attempt to negate that bond issue would, I think, unquestionably be declared invalid.

MR. TOMEI: In other words, you are saying that for a countywide debt, approved by the county, either by referendum or however it is under our other provisions, that a countywide debt and tax to support that debt would be regarded as county, and therefore, could not be conflicted with or taken away—denigrated—by a city ordinance.

MR. CAREY: That's right. It is beyond the exercise of a home rule power or performance of a home rule function." 5 Record of Proceedings, Sixth Illinois Constitutional Convention 4453.

The view expressed by Mr. Carey is reflected in *City of Evanston v. County of Cook*, 53 Ill. 2d 312, 291 N.E.2d 823 (1973). There, the question was whether a home rule county tax may be imposed on the sale of motor vehicles within the corporate limits of a municipality when that municipality adopts an ordinance imposing a substantially identical tax. The court had no difficulty finding there was no section 6(a)

bar to both home rule units of local government taxing the same transaction. The troublesome issue in *City of Evanston* was whether section 6(c) established a preemption that canceled the home rule county tax ordinance.

While we recognize it would be a mistake for us to use a section 6(c) case to determine a section 6(a) issue, we believe the court's reasoning is of some assistance. Rejecting Evanston's preemption position, the court said:

> "If we view the provisions of section 6(c) as establishing the principle of preemption in favor of municipalities instead of only a means of resolving conflicts and inconsistencies, a municipality could prohibit the collection of a home-rule county tax within its boundaries by adopting an ordinance imposing only a nominal tax on the same subject or transaction." 53 Ill. 2d at 318.

The explicit purpose of ordinance 97—1—8, of course, is to prohibit collection of the County's tax. When considering whose "government and affairs" section 2 of the ordinance impacts on, we note, as the court did in *City of Evanston*, "It is recognized that indispensable to home rule is the authority to provide for the necessary revenue." *City of Evanston*, 53 Ill. 2d at 318.

Another observation of the court in *City of Evanston* applies here:

> "In view of the clear intent expressed in article VII we cannot accept a construction of section 6(c) which would weaken the home-rule county by making it possible to deprive it of the authority to exercise its power to tax within its municipalities." 53 Ill. 2d at 318.

In the case before us, Rosemont filed affidavits purporting to show the negative financial impact on the Village's revenue should the County tax be collected. We first observe the affidavits are conclusory and speculative and set out no factual basis for concluding there would be any substantial impact on the Village should the County's 3% tax be imposed. Second, we note the same argument was raised in *City of Evanston*. There, Evanston contended the county's taxes would dry up the source of municipal revenue. We adopt the court's answer:

> "We recognize that the possibility of abuse exists in the exercise of any power. *** Under section 6(g) [of the Illinois Constitution of 1970,] the General Assembly by a vote of three fifths of the members elected to each house may deny or limit the power of a home-rule unit to exercise its power to tax. Under this provision the General Assembly may prevent or rectify the hardships which plaintiffs envisage, should they occur." 53 Ill. 2d at 319.

The closest case we have found to the issue before us is *City of Highland Park v. Cook County*, 37 Ill. App. 3d 15, 344 N.E.2d 665 (1975). There, Highland Park, purporting to act under its home rule

powers, enacted ordinances requiring its approval before Cook County or any other unit of local government could construct, alter, or maintain a highway within the city's corporate limits. The city's purpose, much like Rosemont's purpose here, was to stop something the County was doing. Cook County had proposed the widening of Lake Cook Road, part of which ran within Highland Park. The city contended the construction, with the increased traffic volume it would bring, would depreciate taxable values of the houses in the area and would pose a danger to the safety of area children and other residents.

The court held section 6(a) did not authorize passage of the ordinances. It seemed "obvious" to the court majority that the ordinances "were and are intended not for the City's own government and affairs, but those of other municipalities and the county and State." *City of Highland Park*, 37 Ill. App. 3d at 25. That is, the ordinances, "therefore are not, as they must be, limited to the City's own affairs." *City of Highland Park*, 37 Ill. App. 3d at 26.

■ In matters of taxes it often is difficult to draw firm lines to contain impact. Cook County's amusement tax surely will have some peripheral fallout in Rosemont. Certainly, the tax is of concern to the Village because of its wide holdings in amusement facilities. But it is obvious to us that the real impact of ordinance 97—1—8 is on the government and affairs of the County, not the government and affairs of the Village. For that reason, we agree with the trial court that section 2 of the ordinance was not authorized by section 6(a) of the Illinois Constitution of 1970.

Of course, there is more to the ordinance than section 2. Sections 3, 4, and 5 are the "we won't collect it" provisions. These particular sections were not directly attacked in counts III and IV of the County's third amended complaint. At the same time, the trial court permanently enjoined enforcement of the entire ordinance.

The question, then, is whether we must proceed to determine the validity of sections 3, 4, and 5. The answer depends on whether the invalid section may be severed from the remainder of the ordinance. The ordinance itself contains a severability clause (section 6). But, as the supreme court observed in *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 461, 689 N.E.2d 1057 (1997), quoting *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 532 (1990)):

> "[T]his court 'has frequently held that unconstitutional provisions of a statute were not severable from the remainder of the statute even though the statute itself contained a severability clause.' "

We must consider whether "the legislative purpose or object in passing the act is significantly undercut or altered by the elimination of the invalid provisions." *Best*, 179 Ill. 2d at 461.

We conclude the individual sections of ordinance 97—1—8 are not separable from the whole. The ordinance represents a single, concerted attack on the County's amusement tax. Different weapons, yes, but a single goal. The various sections represent the Village's singleminded purpose of defeating the tax.

We find support for our view in the final "whereas" clause of the ordinance, where the Village intends to "create a conflict" because the County's tax "would otherwise require the Village of Rosemont to collect and remit the Cook County Amusement Tax *and* insofar as the Cook County Amusement Tax Ordinance imposes a tax on patrons who attend or participate in amusements that occur at facilities owned by the Village of Rosemont." (Emphasis added.)

Because we conclude the invalid section of ordinance 97—1—8 cannot be severed from its remaining sections, and because we affirm the trial court's grant of summary judgment on counts III and IV, we affirm the trial court's issuance of an injunction permanently enjoining the Village from enforcing its ordinance.

Our judgment today does not in any way indicate any view of the validity of the remaining "we won't collect" provisions of the ordinance, should the time come when they stand alone. That is a matter, perhaps, for another day.

In addition, because of the view we take of section 2 and its inseverability, we see no need to address the trial court's conclusion that ordinance 97—1—8 has unconstitutional extraterritorial application. We further note the trial court record on this subject would be inadequate to determine the issue of extraterritorial application. See *Mr. B's, Inc. v. City of Chicago*, 302 Ill. App. 3d 930, 939 (1998).

CONCLUSION

For the reasons we have stated, we affirm the trial court's grant of summary judgment on counts III and IV of the County's third amended complaint and we affirm the trial court's issuance of an injunction permanently barring enforcement of ordinance 97—1—8.

Affirmed.

SOUTH, P.J., and HOFFMAN, J., concur.